No. 23-2140

# United States Court of Appeals for the Federal Circuit

RECEIVED
2023 SEP 15 P 4: 12
US COURT OF APPEALS
FEDERAL CIRCUIT

REBECCA CURTIN,

*Appellant*

v.

UNITED TRADEMARK HOLDINGS, INC,

*Appellee*

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board,
Opposition No. 91241083

## BRIEF *AMICUS CURIAE* OF THE GEORGE WASHINGTON UNIVERSITY LAW SCHOOL INTELLECTUAL PROPERTY & TECHNOLOGY LAW CLINIC IN SUPPORT OF THE APPELLANT SEEKING REVERSAL OF THE TRADEMARK TRIAL AND APPEAL BOARD DENIAL OF AN ENTITLEMENT TO A STATUTORY CAUSE OF ACTION

Counsel for Amicus Curiae
Loletta Darden
Student Attorneys:
Cashen Nielsen
Lauren Pittman
George Washington
University Law School
2000 H St NW
Washington, DC 20052

September 15, 2023

## *AMICUS CURIAE* CERTIFICATE OF INTEREST AND FILING CONSENT

Counsel for Amicus Curiae certifies the following:

1. Pursuant to FRAP 29(a), all parties have consented to the filing of this brief.

2. The full name of every entity represented by us is: George Washington University Law School Intellectual Property & Technology Law Clinic

3. The name of the real party in interest:

   None/Not Applicable.

4. Parent corporations and publicly held companies that own 10% or more of stock in the party:

   None/Not Applicable.

5. The names of all law firms, partners, and associates that have not entered an appearance in the appeal and appeared for the entity in the lower tribunal or are expected to appear in this court:

   None.

6. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   None.

7. Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

   Not applicable.

/s/ Loletta Darden
Name: Loletta Darden

Dated: September 15, 2023

# TABLE OF CONTENTS

*AMICUS CURIAE* CERTIFICATE OF INTEREST AND FILING CONSENT ..... i

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

STATEMENT OF INTEREST OF THE *AMICUS CURIAE* ..... 1

ARGUMENT ..... 2

I. A consumer should have statutory standing to oppose the registration of a generic term because preserving the unrestricted use of the informational content of generic terms in the marketplace falls uniquely within the "zone of interests" protected by § 1063 ..... 2

A. The Federal Circuit applies the same two-part analysis under § 1063 and § 1064 to determine whether a statutory cause of action exists. ..... 2

B. Opposition to registration of a generic term implicates unique interests in the informational value of generic terms, which are interests within the zone of interests and are held by consumers. ..... 5

II. Precedent repeatedly recognizes non-commercial interests as a means of proving standing. ..... 9

A. The Supreme Court has consistently recognized non-commercial interests as a means of proving standing in other statutory standing proceedings. ..... 9

B. The Federal Circuit's recognition of associative, non-commercial interests as a means of proving standing in trademark opposition proceedings remains the relevant authority in such cases. ..... 12

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

*Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*,
107 U.S.P.Q.2d 1750 (T.T.A.B. 2013)....................10

*America Online v. AT&T*,
243 F.3d 812 (4th Cir. 2001)....................8

*Australian Therapeutic Pty. Ltd. v. Naked TM, LLC*,
965 F.3d 1370 (Fed. Cir. 2020)....................2, 3, 4

*Corcamore, LLC v. SFM, LLC*,
978 F.3d 1298 (Fed. Cir. 2020)....................3, 4

*Empresa Cubana del Tabaco v. General Cigar Co.*,
753 F.3d 1270 (Fed. Cir. 2014) ....................2, 3

*In re United Trademark Holdings, Inc.*,
122 16 U.S.P.Q.2d 1796 (T.T.A.B. 2017)....................8

*Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*,
853 F.2d 888 (Fed. Cir. 1988)....................5, 10, 13, 14

*Lexmark Intern. v. Static Control*,
572 U.S. 118 (2014)....................3, 4, 9, 10, 11, 14, 15

*Qualitex Co. v. Jacobson Products Co.*,
514 U.S. 159 (1995)....................5, 6, 7

*Ritchie v. Simpson*,
170 F.3d 1092 (Fed. Cir. 1999)....................4, 10, 12, 13, 14

*TransUnion LLC v. Ramirez*,
141 U.S. 2200 (2021)....................11

*Young v. AGB Corp.*,
152 F.3d 1377 (Fed. Cir. 1998)....................2

## Statutes

15 U.S.C. § 1063 ........................................ 2

15 U.S.C. § 1064 ........................................ 2, 4

15 U.S.C. § 1125(a) ........................................ 3, 4, 11

15 U.S.C. § 1127 ........................................ 3

## Other Authorities

1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:2 (5th ed.) ........................................ 6

Lee Thomason, *After Lexmark Rejects Multifactor Measures for Standing, Which Challengers Stand in the Zone of Interests for Lanham Act Remedies?*, 25 FED. CIR. B.J. 699 (2016) ........................................ 6

## STATEMENT OF INTEREST OF THE *AMICUS CURIAE*

The individuals who have agreed to participate in this brief are members of the George Washington University Intellectual Property & Technology Law Clinic.[1] The clinic is operated out of the Jacob Burns Community Legal Clinics, a private law firm of legally supervised student attorneys from the George Washington University Law School. As teachers and scholars, they have an interest in the sound development of law in this area. This case presents important questions regarding the right to bring a statutory cause of action under the Lanham Act. In refusing to find the Opposer had a right to establish a statutory cause of action, the Board below takes an unduly narrow view of the interests that consumers have in the attempted registration of generic terms, which has profoundly negative implications for the use of generic terms by consumers to identify products quickly and efficiently using the generic name of the product class or subclass. All parties have consented to the filing of this *amicus curiae* brief.

[1] No counsel for a party authored this brief in whole or in part, and no counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief.

## ARGUMENT

### I. A consumer should have statutory standing to oppose the registration of a generic term because preserving the unrestricted use of the informational content of generic terms in the marketplace falls uniquely within the "zone of interests" protected by § 1063.

#### A. The Federal Circuit applies the same two-part analysis under § 1063 and § 1064 to determine whether a statutory cause of action exists.

In *Australian Therapeutic Pty. Ltd. V. Naked TM, LLC*, 965 F.3d 1373-1374 (Fed. Cir. 2020) (hereinafter *Australian Therapeutic*) this Court opined that "[t]he statutory requirements to cancel registration of a mark under § 1064 are substantively equal to the statutory requirements to oppose registration of a mark under § 1063." (citing *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998)). This Court has also found that "[t]he linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that [this Court] construe the requirements of these provisions consistently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998). In *Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270, 1275 (Fed. Cir. 2014), this Court held that a "petitioner is authorized by statute to seek cancellation of a mark where it has ''both a 'real interest' in the proceedings as well as a 'reasonable' basis for its belief of damage."

In recent decisions, namely *Australian Therapeutic* and *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298 (Fed. Cir. 2020) (hereinafter *Corcamore*), the Federal Circuit has relied on the analytical framework set out by the Supreme Court in *Lexmark Intern. v. Static Control*, 572 U.S. 118 (2014) (hereinafter *Lexmark*)[2] to determine whether the right to a statutory cause of action exists. In *Lexmark* the Supreme Court outlined two requirements for determining whether a party is entitled to bring or maintain a statutory cause of action: "a party must demonstrate (1) that they have an interest within the zone of interests protected by the statute, and (2) proximate causation." 572 U.S. at 129.

In considering what interests fall within the "zone of interests" protected by 15 U.S.C. § 1125(a), the Supreme Court in *Lexmark* turned to the statutory intent of the Lanham Act as enumerated in 15 U.S.C. § 1127. *Id.* at 131. The Supreme Court highlighted the purpose of protecting against unfair competition, which they noted was, "understood at common law to be concerned with injuries to business reputation and present and future sales." *Id.* With this understanding, the Supreme Court held, "that to come within the zone of interests in a suit for false advertising

---

[2] Prior to explicitly adopting the *Lexmark* standard, the Federal Circuit articulated its own standard of interpretation in *Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270 (Fed. Cir. 2014), but in *Corcamore* the Court found there was, "no meaningful, substantive difference between the analytical frameworks expressed in *Lexmark* and *Empresa Cubana*" *Corcamore*, 978 F.3d at 1303.

under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 118. Although the Supreme Court required a "commercial interest" in *Lexmark*, it also "explained that the zone-of-interests test is 'not especially demanding' and that 'the benefit of any doubt goes to the plaintiff.'" *Corcamore*, F.3d at 1303 (citing *Lexmark*, 572 U.S. at 130 (citation and internal quotation marks omitted)).

In *Australian Therapeutic* and *Corcamore*, the Federal Circuit applied the "commercial interest" requirement to establishing a right to a statutory cause of action under § 1064, but left room for other interests to also establish the right under the statute. Whereas the Supreme Court in *Lexmark*, 572 U.S. at 118, stated, "a plaintiff **must** allege an injury to a commercial interest" (emphasis added), in *Australian Therapeutic*, 978 F.3d at 1375 this Court held that such injury was that, "[a] petitioner **may** demonstrate a real interest" (emphasis added), and *Corcamore*, 978 F.3d at 1306, describes how, "a petitioner **can** demonstrate 'standing.'" (emphasis added). This softer language, along with the Federal Circuit's precedent upholding standing where there was no commercial harm, indicates that there are injuries to interests other than strictly "commercial interests" that a party can allege to establish the right to bring a statutory cause of action under § 1064, and by extension § 1063. *See Ritchie v. Simpson,* 170 F.3d 1092, 1098 (Fed. Cir. 1999)

(hereinafter *Ritchie*) (finding standing where opposer alleged harm to personal values) and *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 853 F.2d 888, 894 (Fed. Cir. 1988) (hereinafter *Jewelers*) (finding standing where the opposer alleged harm to membership in a trade group).

**B. Opposition to registration of a generic term implicates unique interests in the informational value of generic terms, which are interests within the zone of interests and are held by consumers.**

When a party challenges a registration for likelihood of confusion, it is reasonable to limit the "zone of interests" to "commercial interests." The harm posed by a likelihood of confusion is inherently commercial, and competitors often bring these claims to protect their sales, the source-identifying value of their marks, and the company's goodwill from being undercut by a confusingly similar mark. As the Supreme Court noted in *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164 (1995) (hereinafter "*Qualitex*"), "the [Lanham Act] helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product."

Challenging a registration because the term is generic, however, does not raise the same type of commercial interest or harm. A generic term implicates the informational function of the term rather than its commercial value. This distinction from commercial value indicates that, "challenges to registration of a

mark might be divided between challenges to content of the mark, and challenges based on a likelihood of consumer confusion. A content challenge asks, among other things, is the mark abandoned, or generic, or misdescriptive?" Lee Thomason, *After Lexmark Rejects Multifactor Measures for Standing, Which Challengers Stand in the Zone of Interests for Lanham Act Remedies?*, 25 Fed. Cir. B.J. 699 (2016). With a generic term, the value to consumers is not its source identifying function, but the informational content of the term. The value is in using generic terms to identify and convey information about the good or service.

Removing generic terms from the marketplace directly harms consumers. In *Qualitex*, the Supreme Court noted that the purpose of trademark law is to, "reduce[s] the customer's costs of shopping and making purchasing decisions." 514 U.S. at 163-164 (quoting 1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2.01[2], p. 2–3 (3d ed. 1994)). The unrestricted use of generic terms benefits consumers because, "when an alleged trademark is declared to be a generic name by a court, it reduces the costs of communication by making it cheaper for competitors to inform consumers that they are selling the same kind of product." 1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:2 (5th ed.). In turn, it is easier for consumers to locate and purchase products using the product's generic descriptor. Imagine the difficulty in trying to buy popcorn

and not being able to rely on conspicuous labeling identifying the product as popcorn because the term popcorn was a registered trademark of one source for popcorn products. In *Qualitex*, the Supreme Court held that a purpose of the trademark law is to help reduce the customer's costs of shopping and making purchasing decisions, not to make them more costly and inefficient. 514 U.S. at 163-164. The consumer's interest in cost and efficiency is real and worthy of protection, according to the Supreme Court. Removing unrestricted use of generic terms from the marketplace to identify the class or subclass of products associated with the generic term directly thwarts the purpose articulated by the Supreme Court.[3]

Generic terms have unique value for consumers in the marketplace because they inform the public about a type of good and allow them to identify goods of that class from any source. The Board acknowledged this informational value of generic terms in its refusal to register the term "Little Mermaid," noting "other doll makers interested in marketing a doll that would depict the character have a

[3] Under the fair use doctrine, a competitor would be able to use the term Rapunzel in an informational context to identify Rapunzel dolls. This use, however, carries the risk that a trademark owner could claim that the particular use went too and rose to the level of infringement, as a result the possibly of being accused of trademark infringement would likely have a chilling affect on the use of Rapunzel in a conspicuous sense to identify Rapunzel dolls.

competitive need to use that name to describe their products." *In re United Trademark Holdings, Inc.*, 122 16 U.S.P.Q.2d 1796, 1800 (T.T.A.B. 2017). Likewise, consumers that rely on the generic name of a product to search for and locate relevant products should not be forced to suffer enhanced search costs and time because rights in the generic have been granted to a single source.

Restricting the use of a generic term also harms the public's use of that term to identify and discuss related goods. The Declarations from the Organization for Transformative Works ("OTW") and folklorist Jack Zipes from the Exhibits in Support of Opposer's Renewed Motion for Summary Judgment before the Board illustrate the range and scope use of generic terms by the public. The OTW noted that registration of a generic term would "chill the creativity of fans, creators of expressive works, small retailers, and the public, who previously sought and were able to make, share, and sell products related to [the term]." Opposer's Renewed Mot. for Summ. J. at 314. The Fourth Circuit also acknowledged the harm posed by robbing consumers of the use of generic terms for their ordinary meaning in *America Online v. AT&T* 243 F.3d 812, 822 (4th Cir. 2001): "the repeated use of ordinary words functioning within the heartland of their ordinary meaning... cannot give [a single entity] a proprietary right over those words, even if an association develops between the words and [that entity]."

Given the real and identifiable harm to consumers by removing generic terms from the marketplace, consumers should have a right to a statutory cause of action to protect their interest, which the Supreme Court has found to be one purpose of trademark law. While the consumer's interest is not commercial, this Court has found an entitlement to a statutory cause of action when concrete, identifiable non-commercial interests exist.

## II. Precedent repeatedly recognizes non-commercial interests as a means of proving standing.

### A. The Supreme Court has consistently recognized non-commercial interests as a means of proving standing in other statutory standing proceedings.

The Supreme Court's ruling in *Lexmark* is appropriate for identifying the zones of interests which a party must plead when litigating claims based on false advertisement and likelihood of confusion, but not when the challenge is to the registration of a generic term. Unlike the nature of the proceedings in this case, *Lexmark* was litigated within the specific context of determining the commercial business interests of two companies, and the Supreme Court's reading of the statute heavily relied on the commercial nature of the issue litigated in its determination of standing. *Lexmark*, 572 U.S. at 121. The opposition proceeding at bar involves one party questioning the merits of removing information from the

public domain by granting a generic term trademark status and protection. These facts do not reflect commercial issues such as were at the focal point of the *Lexmark* case, and thus, the reasoning employed in *Lexmark* is an ill fit.

Historically, proof of standing in a Board opposition proceeding has reflected a low threshold, and this is because this Court has articulated a rather "liberal threshold for determining standing," that is, "whether a plaintiff's belief in damage has a reasonable basis" and reflects a real concrete identifiable interest in the case, not necessarily a commercial interest. *Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 U.S.P.Q.2d 1750, 1760 (T.T.A.B. 2013). In *Ritchie*, this Court found that plaintiff's sensitivities towards a scandalous mark obtaining trademark protection presented a concrete identifiable, yet non-commercial interest, and in *Jewelers*, this Court found that a trade organization's interest in maintaining its membership presented a concrete identifiable, yet non-commercial interest. *Ritchie*, 170 F.3d at 1098; *Jewelers Vigilance Comm., Inc.*, 853 F.2d at 893.

Although the Supreme Court's ruling in *Lexmark* required a commercial interest for claims brought under Section 43(a) for false advertising, the Supreme Court has found a non-commercial interest sufficient to support a statutory cause of action in other contexts. Although *Lexmark* is not the relevant authority for

establishing standing for opposition cases involving generic terms presenting non-commercial interests of the type presented here, *Lexmark* nonetheless provides insight as to the recognition of non-commercial interests as a means of establishing standing in accordance with the Lanham Act. Specifically, the Supreme Court noted: "a plaintiff suing under §1125(a) ordinarily must show that its economic **or reputational injury** flows directly from the deception wrought by the defendant's advertising" (emphasis added). *Lexmark*, 572 U.S. at 119.

However, in a recent case decided in 2021, the Supreme Court affirmed that a statutory cause of action can materialize as reputational harm apart from a commercial interest. *TransUnion LLC v. Ramirez*, 141 U.S. 2200, 2200 (2021) (hereinafter *TransUnion*). In this case, consumers who were part of a class action were found to possess standing to sue a credit reporting agency for failure to ensure the accuracy of credit files when disseminated to third parties, and this, in turn, harmed the reputation of the consumers. *TransUnion LLC*, 141 U.S. at 2207. These consumers' credit reports contained alerts which were disseminated to outside parties displaying harmful labels classifying these consumers as drug traffickers, potential terrorists, or serious criminals. *Id.*

As illustrated in *TransUnion*, reputational harm is not confined within the context of commercial harm. The Supreme Court does not suggest that reputational

harm as a means of establishing standing is inextricably linked to a commercial interest. *Id.* Thus, the Supreme Court reinforces the principle that standing can be established apart from presenting a commercial interest.

In *TransUnion*, the Supreme Court found standing where transmitting false, misleading information harmed consumers' non-commercial interest. *Id.* Similarly, in the case at bar, impeding the free transmission of information in a traditionally generic marketplace of dolls will serve to mislead and misinform, and this will cause marketplace injury of a person situated in the relevant purchasing class. Such consumers will be at a detriment if this generic term, Rapunzel, can no longer denote the good itself, but instead, a specific source. Thus, given that a similar non-commercial harm exists in these facts, this Court should find that an entitlement to a statutory case of action exists.

**B. The Federal Circuit's recognition of associative, non-commercial interests as a means of proving standing in trademark opposition proceedings remains the relevant authority in such cases.**

In *Ritchie*, this Court found that a private citizen opposing registration of a mark had standing based on his belief and others' beliefs that the mark in question was scandalous and denigrated personal values. *See Ritchie*, 170 F.3d at 1098

(finding standing where opposer, with vast support nation-wide[4], successfully alleged harm where applicant's marks were scandalous, denigrated personal values, and minimized domestic violence issues).

In *Ritchie*, this Court identified a concrete identifiable interest in the dissemination of information that might disparage the image and representation of a loving father to the public. Similarly, in the case at bar, opposer has identified a concrete identifiable interest associated with the removal of information in a way that harms consumers according to the purpose of the Trademark Act. Obstructing the transmission of full information conveyed by a generic term in the marketplace will thwart the representation of facts available in the market, and this disrupts consumers' ability to quickly and efficiently evaluate products available in the market.

Further, in *Jewelers*, this Court found that a trade organization which opposed the registration of a mark that was confusingly similar to a third-party company's slogan and brand name had an associative interest given that the

---

[4] The opposer has also obtained more than 171 petition signatures from other individual consumers who share the opposer's belief, with 157 of those petition signers residing in the United States.

organization faced the threat of loss of membership as a result of the mark's registration. *See Jewelers Vigilance Comm., Inc.*, 853 F.2d at 893 (finding that trade organization successfully established standing where the threat of membership loss presented if applicant's mark, which was confusingly similar to a slogan and the well-known mark owned by renowned supplier, became registered, even without the supplier having membership status). The Board holds the position that opposer's alleged damage is too speculative and remote to invoke an opposition proceeding. When articulating this position, the Board sites language from *Lexmark* where that Court enumerates a series of commercial stakeholders deemed too remote to hold standing, such as the "competitor's landlord" and "electric company." *Lexmark*, 572 U.S. at 134. Yet, in *Jewelers*, this Court clearly held that the trade organization (which is arguably more removed than the "competitor's landlord") had standing, even though there was no direct commercial interest.

This Court has repeatedly found standing in cases where the challenging party did not present a commercial interest, and these precedents remain good law even after *Lexmark*. In fact, *Ritchie* is a non-commercial matter of a protected interest where the opposing party was granted standing without personal damage and without the requirement of pleading an economic loss or even reputational

damage. The mere fact that such precedents have not been overruled by *Lexmark* necessarily exacts the conclusion that non-commercial interests present a legitimate means of establishing an entitlement to a statutory cause of action in opposition proceedings, particularly where the challenging party has a real, concrete identifiable interest.

Given that the nature of this case involves the question of genericness and the resulting harm to the opposer and others by removing the product-indicating function of a generic term is one analogous to those harms repeatedly acknowledged by the courts, the outcome of the Board's decision should be reversed.

## CONCLUSION

Given that a consumer should have statutory standing to oppose the registration of a generic term since this interest is uniquely within the "zone of interests" protected by § 1063, and that this principle is backed by court precedent that recognizes non-commercial interests as a means of establishing an entitlement to a statutory cause of action, this Court should reverse the Board's dismissal of the opposition.

Dated: September 15, 2023

Respectfully Submitted,

Loletta Darden
/s/ Loletta Darden

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies that this brief complies with the type-volume limitations of Circuit Rule 32(a).

1. Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(b), this brief includes 3,308 words.

2. This brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied on the word count of this word-processing system in preparing this certification.

/s/ Loletta Darden

Name: Loletta Darden
George Wash. Univ. Law School
Intellectual Prop. & Tech. Law Clinic
2000 H St NW
Washington, DC 20052
Loletta.darden@law.gwu.edu
312.498.4179

Dated: September 15, 2023

## CERTIFICATE OF SERVICE

I, Loletta Darden, hereby certify that the Amicus Brief of the George Washington University Law School Intellectual Property & Technology Clinic and associated documents have been sent today, **September 15, 2023**, via electronic mail to counsel of record for Appellant Rebecca Curtin and Appellee United Trademark Holdings, Inc.:

Matthew Barlow
Workman Nydegger
60 South Temple STE 1000
Salt Lake City, UT 84111
MBarlow@wnlaw.com
jstringham@wnlaw.com

Erik M. Pelton
Erik M. Pelton & Associates,
PLLC PO Box 100637
Arlington, VA 22210
erik@erikpelton.com

By: /s/ Loletta Darden
Loletta Darden
Attorney for Amicus Curiae
The George Washington University
Law School Intellectual Prop. &
Tech. Law Clinic
2000 H St NW
Washington, DC 20052
312.498.4179
Loletta.darden@law.gwu.edu