# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

REBECCA CURTIN,

*Appellant*,

v.

UNITED TRADEMARK HOLDINGS, INC.,

*Appellee.*

———————————

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board,
Opposition No. 91241083

———————————

## BRIEF OF APPELLEE UNITED TRADEMARK HOLDINGS, INC.

———————————

Erik M. Pelton
ERIK M. PELTON & ASSOCIATES, PLLC
111 Park Place, Suite 1A
Falls Church, Virginia 22046
(703) 525-8009
erik@erikpelton.com

*Counsel for Appellee*
*United Trademark Holdings, Inc.*

January 19, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2140

**Short Case Caption** Curtin v. United Trademark Holdings, Inc.

**Filing Party/Entity** United Trademark Holdings, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/19/2024

Signature: /ErikMPelton/

Name: Erik M. Pelton

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| United Trademark Holdings, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable ☐  Additional pages attached

| | | |
|---|---|---|
| Erik M. Pelton & Associates, PLLC; Erik M. Pelton | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☑  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS .......................................................................iv

TABLE OF AUTHORITIES......................................................................v

STATEMENT OF RELATED CASES ........................................................1

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE AND FACTS .............................................1

SUMMARY OF THE ARGUMENT .........................................................5

ARGUMENT ...........................................................................................7

I.  *Lexmark* is the Proper Standard for Evaluating Whether an Opposer is Entitled to a Statutory Cause of Action ..........................................7

A. Entitlement to a Statutory Cause of Action is Governed by *Lexmark* .......7

   i.  The *Lexmark* Standard Applies to Opposition Proceedings .........10

B. Curtin's Continued Reliance on *Ritchie* is Misguided..............................12

   i.  *Ritchie* Was Effectively Overruled................................................13

   ii.  *Ritchie* is Moot Because Section 2(a) Has Been Found Unconstitutional ...........................................................................13

   iii.  *Ritchie* is Inapplicable...............................................................15

   iv.  Even if *Ritchie* Provided the Applicable Standard, Curtin Still Would Not Meet the Standard ....................................................16

II.  The Board Properly Applied the *Lexmark* Standard in Finding Curtin is Not Entitled to a Statutory Cause of Action to Oppose UTH's Trademark .........17

A. Curtin Cannot Satisfy the Zone-of-Interests Test....................................19

B. Curtin Has Not Demonstrated Her Belief of Damage is Reasonable.......22

CONCLUSION AND RELIEF SOUGHT ...........................................................24

# TABLE OF AUTHORITIES

CASES                                                                          PAGES

*Association of Battery Recyclers, Inc. v. EPA*,
716 F.3d 667 (2013) ...............................................................................12

*Australian Therapeutic Supplies PTY. Ltd. v. Naked TM, LLC*,
965 F.3d 1370 (Fed. Cir. 2020) ........................................................5, 7, 9

*Corcamore, LLC v. SFM, LLC*,
978 F.3d 1298 (Fed. Cir. 2020) ......................................................*passim*

*Envirocare, Inc. v. NRC*,
194 F.3d 72 (D.C. Cir. 1999) ...........................................................11,12

*H.B. Halicki Productions v. United Artists Communications, Inc.*,
812 F.2d 1213 (CA9 1987) .................................................................18

*Holmes v. Securities Investor Protection Corporation*,
503 U.S. 258 (1992)........................................................................8, 23

*Iancu v. Brunetti¸*
139 S.Ct. 2294 (2019)..................................................................5, 15, 21

*Lexmark Int'l, Inc. v. Static Control Components Inc.*,
572 U.S. 118 (2014)........................................................................*passim*

*Meenaxi Enter. v. Coca-Cola Co.*,
38 F.4th 1067 (Fed. Cir. 2022).........................................................18,19

*Ritchie v. Simpson*,
170 F.3d 1092 (Fed. Cir. 1999) ......................................................*passim*

*Young v. AGB Corp.*,
152 F.3d 1377 (Fed. Cir. 1998) .....................................................10, 13


STATUTES

15 U.S.C. § 1052(a) ...........................................................................21

15 U.S.C. § 1052(b) .......................................................................21, 22

15 U.S.C. § 1063 ...................................................................*passim*

15 U.S.C. § 1064 ...................................................................*passim*

15 U.S.C. § 1125(a) ...........................................................8, 11, 14

15 U.S.C. § 1127 ..............................................................................18

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, UTH states that there is no other appeal in connection with this case that has previously been before this Court or is currently pending in any other court. Counsel is unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

Whether the Trademark Trial and Appeal Board (the "Board") erred in finding that Curtin is not entitled to oppose UTH's trademark application (Serial No. 87/690,863) under 15 U.S.C. § 1063 based on her status as a mere consumer of dolls?

## STATEMENT OF THE CASE AND FACTS

This appeal comes before the court following the Board's dismissal of Appellant Curtin's opposition after a finding that Curtin did not have an entitlement to bring a statutory cause of action opposing UTH's trademark application under the Lanham Act.

Appellee United Trademark Holdings, Inc.'s (hereinafter "UTH") application to register the RAPUNZEL trademark (Ser. No. 87/690,863) was filed with the U.S. Patent and Trademark Office ("USPTO") on November 20, 2017, asserting use of the mark in commerce in connection with dolls and toy figures in

International Class 28. Appx38-39. UTH's application was approved by the USPTO examiner and published for opposition on April 10, 2018. Appx45. Curtin filed to oppose UTH's mark at the Board on May 9, 2018, alleging that UTH's RAPUNZEL mark is merely descriptive, generic, functional, and fails to function. Appx45-55.

On June 18, 2018, UTH filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on grounds that Curtin failed to plead sufficient facts to demonstrate standing to oppose UTH's trademark application. Appx62-76. On July 5, 2018, Curtin filed a motion to amend her notice of opposition as well as a response to UTH's Motion to Dismiss, arguing that she had sufficiently established standing to oppose UTH's mark. Appx78-Appx128. On July 25, 2018, UTH filed a renewed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for lack of standing on grounds that that Curtin failed to sufficiently demonstrate she had standing in her Amended Notice of Opposition. Appx129-141. The Board denied UTH's Motion to Dismiss on December 28, 2018. Appx176-191.

On January 22, 2019, Curtin filed both a motion for leave file a second amended notice of opposition and her Second Amended Notice of Opposition, which maintained that UTH's mark is generic, merely descriptive, functional, fails to function as a trademark, and added a fraud claim. Appx192-261; Appx262-327. UTH filed its Answer to Curtin's Second Amended Notice of Opposition denying

the allegations on February 20, 2019. Appx328-452.

On April 27, 2020, Curtin filed a motion for summary judgment on grounds that UTH's mark is generic, descriptive, and fails to function as a trademark. Appx355-737. On March 9, 2021, the Board denied Curtin's motion on grounds that Curtin failed to establish her entitlement to a statutory cause of action and the trial dates were reset. Appx934-Appx940. The Board noted that "standing" was re-characterized as "entitlement to a statutory cause of action" and found that Curtin "failed to carry her burden of establishing that there is no genuine dispute of material fact regarding her entitlement to the statutory cause of action." Appx938.

Curtin filed a renewed motion for summary judgment on March 26, 2021, followed by an amended Renewed Motion for Summary Judgment on April 6, 2021. Appx941-1422, Appx1648-2126. On May 25, 2021, UTH filed a response to Curtin's Amended Renewed Motion for Summary Judgment. Appx2352-2456. Curtin then filed a reply on June 14, 2021, followed by a Corrected Reply in Support of its Renewed Motion for Summary Judgment on June 14, 2021. Appx2457-2463, Appx2464-2471.

On October 19, 2021, the Board denied Curtin's Amended Renewed Motion for Summary Judgment, finding that genuine disputes of material fact remain for trial regarding Curtin's entitlement to bring a statutory cause of action. Appx2472-2480. In its October 19, 2021, order, the Board bifurcated the opposition

proceeding into two separate trial phases with the first phase to focus solely on the issue of Curtin's entitlement to a statutory cause of action ("Phase One") and, if necessary, a second phase to focus on the specific grounds pleaded. Appx2472-2480.

On November 5, 2021, Curtin filed a motion to compel discovery and suspend the proceedings. Appx2481-2635. On November 9, 2021, the Board issued an order denying Curtin's motion to compel and maintained the trial dates as set in the October 19, 2021, order. Appx2636-2637. On November 11, 2021, Curtin filed pretrial disclosures regarding Phase One. Appx2638-2639. On December 23, 2021, Curtin filed testimony Appx2640-2722. On February 21, 2022, UTH filed its notice of reliance regarding Phase One. Appx2723-2724.

Following briefing of Phase One by the parties (Appx2725-2780), on May 4, 2023, the Board dismissed the opposition, finding Curtin "failed to prove she is entitled to the statutory cause of action she invoked – opposing registration of Applicant's mark." Appx1-13. On July 5, 2023, Curtin filed a notice of appeal to this court. Appx2781-2797.

## SUMMARY OF THE ARGUMENT

Curtin has not met the burden of demonstrating that she is entitled to a statutory cause of action to oppose UTH's trademark application under the *Lexmark* standard. Contrary to Curtin's assertions, the Federal Circuit and Board have both established that the *Lexmark* test is the proper standard to evaluate whether a petitioner has established entitlement to oppose a trademark application under 15 U.S.C. § 1063. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1305-06, n.2 (Fed. Cir. 2020); *Australian Therapeutic Supplies PTY. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373 (Fed. Cir. 2020); Appx5-6.

In her Brief, Curtin argues that the Board should have relied on the standard espoused in *Ritchie v. Simpson* rather than the *Lexmark* standard. *See* Curtin's Br. at 17. Curtin's continued attempt to rely on *Ritchie* is misguided. The Supreme Court and Federal Circuit have effectively overruled the standard used in *Ritchie*, as it was decided pre-*Lexmark*. Moreover, the opposer's claim in *Ritchie* was based on Section 2(a) of the Lanham Act, which has since been deemed unconstitutional. *See Iancu v. Brunetti¸*139 S.Ct. 2294, 2297 (2019). Further, since *Ritchie* concerned immoral or scandalous marks, it is factually distinct from this case. *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999).

Applying *Lexmark's* standard, the Board properly found that Curtin failed to establish entitlement to a statutory cause of action due to her status as a consumer

of dolls. Appx6. In *Lexmark*, the Supreme Court established that mere consumers are not protected under the Lanham Act's "aegis." *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 572 U.S. 118, 132 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act- a conclusion reached by every Circuit to consider the question"). Further, as the Board stated, "[t]he essential problem is that consumers such as Opposer are generally not statutorily entitled to oppose registration under 15 U.S.C. § 1063." Appx6.

Curtin's argument that *Lexmark*'s standard does not apply to Board proceedings is contrary to this Court's prior rulings. Under *Lexmark*, to establish entitlement to a statutory cause of action, a petitioner must show both (1) an interest that falls within the zone of interests protected by the statute; and (2) a reasonable belief of damage that would be caused by registration of the mark (proximate causation). *Lexmark*, 572 U.S. at 129. Curtin has not demonstrated that she has a real interest in this proceeding, as she is merely a consumer of dolls and lacks any commercial interest. Curtin has also failed to show that her belief of damage is reasonable, as the harms she asserts are future harms that are purely speculative and unsupported by evidence. Therefore, under the *Lexmark* standard, Curtin has failed to show that she is entitled to a statutory cause of action to oppose

UTH's trademark application and the Board's decision should be affirmed.

## ARGUMENT

### I. *Lexmark* is the Proper Standard for Evaluating Whether an Opposer is Entitled to a Statutory Cause of Action

Curtin's position is that the Board erred in applying the "zone-of-interests" and "reasonable belief in damage" standards espoused in *Lexmark* to "administrative" proceedings such as the opposition instituted by Curtin. Curtin's brief argues that 1) an opposition at the Board does not constitute a "cause of action" to which *Lexmark* applies and 2) the holding in *Ritchie*, despite being essentially vacated by later decisions, is controlling. Curtin's arguments have no support, as the Board properly applied *Lexmark's* two-pronged test and correctly disregarded *Ritchie*.

### A. Entitlement to a Statutory Cause of Action is Governed by *Lexmark*

In *Lexmark*, the Supreme Court determined that the "standing" doctrine is more appropriately characterized as entitlement to a statutory cause of action. *See Australian*, 965 F.3d at 1373 (*citing Lexmark*, 572 U.S. at 128, n.4). To demonstrate entitlement to a statutory cause of action under *Lexmark*, a party must show (1) an interest falling within the zone of interests protected by the statute; and (2) proximate causation. 572 U.S. at 134.

The 2014 Supreme Court ruling in *Lexmark* also clarified its usage of the prudential standing "rubric" in past decisions and noted "[w]hether a plaintiff

7

comes within the "the 'zone of interests'" is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id*. at 127. The Court then analyzed 15 U.S.C. § 1125(a), which allows suit by "*any person* who believes that he or she will be damaged by false advertising." *Id*. at 129 [emphasis added]. Importantly, the Court limited the scope of this language, stating "the unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that § 1125(a) should not get such an expansive reading." *Id*. (*citing Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 266 (1992)).

The Court then turned to the statement of the Lanham Act's purpose, which enumerates the statute's goal of regulating commerce. *Id*. at 131. The Court held that "a plaintiff must allege an injury to a commercial interest in reputation or sales" to meet the zone of interests test. *Id*. at 131-32. Finally, the Court noted that consumers are "not under the Act's aegis." *Id*. at 132. Significantly, the claims asserted in *Lexmark* were brought under the Lanham Act for false advertising under 15 U.S.C. §1125(a). *Id*. at 118.

This Court decided *Empresa Cubana* in 2014, and explained that, under 15 U.S.C. § 1064, "[a] petitioner is authorized by statute to seek cancellation of a mark where it has 'both a 'real interest' in the proceedings as well as a 'reasonable' basis for its belief of damage." *Empresa Cubana Del Tabaco v. General Cigar Co.*,

753 F.3d 1270, 1276 (Fed. Cir. 2014). This Court did not discuss the specific

applicability of the *Lexmark* test in its *Empresa Cubana* decision. Revisiting the

entitlement to a statutory cause of action issue several years later, in *Corcamore*,

this Court expanded the applicability of the *Lexmark* test, finding that it should be

used for determining whether a party is entitled to cancel a trademark registration

under 15 U.S.C. § 1064 but noted that it "discern[ed] no meaningful, substantive

difference between the analytical frameworks expressed in *Lexmark* and *Empresa*

*Cubana*." *Corcamore*, 978 F.3d at 1303, 1305 (Fed. Cir. 2020) (*see Empresa*

*Cubana*, 753 F.3d at 1275-76 (holding appellant was entitled to a "statutory cause

of action" under the Lanham Act)).

Going further, in *Corcamore* this Court indicated that the *Lexmark* standard

is applicable to Board trademark opposition proceedings under § 1063, noting

"[t]he statutory requirements to cancel registration of a mark under § 1064 are

substantively equal to the statutory requirements to oppose the registration of a

mark under § 1063." *Id*. at 1306, n.2 (*citing Australian Therapeutic Supplies,* 965

F.3d at 1373). The two sections share nearly identical wording in establishing a

statutory cause of action (15 U.S.C. § 1063 entitles "Any person who believes that

he would be damaged by the registration of a mark upon the principal register…"

to oppose a trademark application; 15 U.S.C. § 1064 entitles "…any person who

believes that he is or will be damaged…by the registration of a mark on the

principal register" to petition to cancel the registration). This Court has also previously stated, "The linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that we construe the requirements of these provisions consistently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998).

Accordingly, under *Lexmark* and its progeny, to demonstrate entitlement to a statutory cause of action to oppose a trademark application under § 1063, a party must demonstrate it has (1) an interest falling within the zone of interests protected by the statute; and (2) that its alleged harm is proximately caused by violation of the statute. *Lexmark*, 572 U.S. at 129, 132.

### i. The *Lexmark* standard applies to opposition proceedings

Curtin argues that "[t]he *Lexmark* framework does not govern agency opposition proceedings and, even if it did, the Board misapplied that framework." *See* Curtin's Br. at 24. Curtin continues, "*Lexmark* concerns the standards for maintaining a statutory cause of action in federal court; it did not address the standards for participating in an administrative proceeding, like the opposition proceeding here. And nothing in *Lexmark* or its progeny 'expressly overruled' *Ritchie*." *Id*. at 29.

However, Curtin's argument overlooks the Federal Circuit's decision in *Corcamore*, which held that *Lexmark* applies to trademark cancellations under §

10

1064 (and, by extension, to trademark oppositions under § 1063). 978 F.3d at 1303, 1306, n.2. In *Corcamore*, this court explained that "§ 1064, like § 1125(a), is a statutory cause of action provided in the Lanham Act… [t]he *Lexmark* analytical framework applies to § 1064 and § 1125(a) because both are statutory causes of action." *Id*. at 1304-05. Additionally, this court stated, "*Lexmark* established the analytical framework to be used for determining eligibility requirements for all statutory causes of action, including under § 1064, absent contrary Congressional intent. Like all lower tribunals, we are obligated to apply that framework where applicable." *Id*. at 1305. Given that § 1064 and § 1063 are interpreted consistently, § 1064 provides a statutory cause of action to which *Lexmark* applies.

Curtin also asserts that "[j]udicially-devised prudential standing requirements, of which the 'zone of interests' test is one, are... inapplicable to an administrative agency acting within the jurisdiction Congress assigned to it." *See* Curtin's Br. at 31 (*citing Envirocare, Inc. v. NRC*, 194 F.3d 72, 75 (D.C. Cir. 1999)). However, the *Envirocare* case was decided in 1999, prior to *Lexmark* and *Corcamore*, and concerned petitions of review of orders issued by the Nuclear Regulatory Commission. *Envirocare*, 194 F.3d at 74.

Further, in *Lexmark*, the Supreme Court clarified that "[w]hether a plaintiff comes within 'the zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause

of action encompasses a particular plaintiff's claim," rather than evaluating it under the "'prudential' rubric" it had previously used. 572 U.S. at 127 (noting "As Judge Silberman of the D.C. Circuit recently observed, "'prudential standing' is a misnomer" as applied to the zone-of-interests analysis, which asks whether "this particular class of persons ha[s] a right to sue under this substantive statute." *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675-676 (2013) (concurring opinion)). As such, Curtin's reliance on the *Envirocare* case is misguided, as it was decided pre-*Lexmark*, in which the Supreme Court made clear that the zone-of-interests and proximate causation requirements are the proper test to determine entitlement to a statutory cause of action asserted under the Lanham Act. *Lexmark*, 572 U.S. at 131-32.

## B. Curtin's Continued Reliance on *Ritchie* is Misguided

Throughout her brief, Curtin argues that the Board erred in relying on the *Lexmark* standard rather than the one set forth in *Ritchie v. Simpson*. However, as explained above, the Federal Circuit and Board have both previously determined that the *Lexmark* standard is the applicable framework for establishing entitlement to a statutory cause of action under proceedings governed by the Lanham Act, and specifically for Board proceedings regarding registrability. Curtin's continued reliance on *Ritchie* is misguided for several reasons.

### i. *Ritchie* was effectively overruled

Given that *Ritchie* was decided in 1999, the Federal Circuit analyzed whether the opposer in that case was entitled to oppose the trademarks at issue under the umbrella of "standing." *Ritchie v. Simpson*, 170 F.3d 1092, 1093 (Fed. Cir. 1999). In 2014, the Supreme Court in *Lexmark* re-characterized "standing" as an entitlement to a statutory cause of action. 572 U.S. 118 (2014). Subsequently, the Federal Circuit ruled in *Corcamore* that "the *Lexmark* analytical framework is the applicable standard for determining whether a person is eligible under § 1064 to bring a petition for the cancellation of a trademark registration." 978 F.3d at 1303. Further, the Federal Circuit has noted that due to their parallel language, § 1063 and § 1064 are to be interpreted "consistently." *Young*, 152 F.3d at 1380 (Fed. Cir. 1998). Accordingly, the Federal Circuit's decision in *Corcamore* effectively overruled the standard espoused in *Ritchie* for determining whether a party is entitled to oppose a trademark registration.

### ii. *Ritchie* is moot because Section 2(a) has been found unconstitutional

Curtin argues that "the Board further erred by flatly disregarding this Court's decision in *Ritchie*, which directly addressed the requirements for demonstrating an entitlement to oppose a trademark registration and is controlling authority." *See* Curtin's Br. at 28. Curtin relies on *Ritchie* for the premise that Section 13 of the Lanham Act "establishes a broad class of persons who are proper opposers; by its

terms the statute only requires that a person have a belief that he would suffer some kind of damage if the mark is registered." *Id.* at 22 (*citing Ritchie*, 170 F.3d at 1095).

Curtin then argues that she has met this burden easily by demonstrating that registration of the RAPUNZEL mark would hinder competition of dolls and increase costs for consumers. *See* Curtin's Br. at 22. Curtin continues that, under *Ritchie*, she is only required to demonstrate a "'real interest' in the proceedings and must have a 'reasonable basis' for [his] belief of damage." *Id.*

However, as discussed above, the Federal Circuit effectively overruled *Ritchie* in holding that the *Lexmark* test is the applicable standard for determining a statutory cause of action under the Lanham Act. *Corcamore*, 978 F.3d at 1303. In *Corcamore*, this Court also stated that, in *Empresa Cubana*, "[w]e recognized *Lexmark's* impact on the false advertising cause of action under § 1125(a), but we addressed *Lexmark* only in passing and, in particular, did not address whether the *Lexmark* framework applies to § 1064. Instead, we relied on our precedents in *Ritchie v. Simpson…*" 978 F.3d at 1304. This Court then held "that the *Lexmark* zone-of-interests and proximate-causation requirements control the statutory cause of action analysis under § 1064." *Id.* at 1305. This Court further noted that "the statutory requirements to cancel registration of a mark under § 1064 are substantively equal to the statutory requirements to oppose the registration of a

mark under § 1063." *Corcamore*, 978 F.3d at 1306, n.2. As such, the Federal
Circuit has made clear that entitlement to a statutory cause of action under
*Lexmark* is the proper standard to determine a party's eligibility to oppose a
trademark registration under 15 U.S.C. § 1063.

### iii. *Ritchie* is inapplicable

Notably, the opposer's grounds for opposition in *Ritchie* were entirely
different from those at issue in the present case. In *Ritchie*, the opposer's claim was
based on Section 2(a) of the Lanham Act on grounds that the marks at issue
consisted of immoral or scandalous matter. 170 F.3d 1092, 1093 (Fed. Cir. 1999).
However, the Supreme Court struck down Section 2(a) of the Lanham Act on
grounds that the bar on immoral or scandalous marks was unconstitutional under
the First Amendment. *Iancu v. Brunetti*¸ 139 S.Ct. 2294, 2297 (2019). Notably,
there were no opportunities for courts to decide whether *Lexmark* applied to
Section 2(a). Additionally, given that *Ritchie* involved marks containing immoral
or scandalous matter, that case did not concern the Lanham Act's purpose of
regulating and protecting commercial interests.

Here, as the Board pointed out, Curtin's claim directly concerns the Lanham
Act's aim to regulate commerce. Appx7. ("Unlike the plaintiff's ground for
opposition in *Ritchie*, 50 USPQ2d at 1023, Opposer's grounds for opposition in
this case arise out of the Trademark Act's 'intent' to "protect persons engaged

in…commerce against unfair competition"). Therefore, *Ritchie* is inapplicable because the facts are distinguishable from the present case, and it was decided based on a Lanham Act provision that has since been deemed unconstitutional.

### iv. Even if *Ritchie* provided the applicable standard, Curtin still would not meet the standard

Even if *Ritchie* were the applicable standard, which UTH reiterates is not the case, Curtin still would not be able to establish standing. Under *Ritchie*, to show that it has standing, an opposer would need to demonstrate that it believed it would suffer harm if the mark at issue were to register. 170 F.3d 1092, 1095 (Fed. Cir. 1999). An opposer would also need to demonstrate a "real interest" in the proceedings and a "reasonable" belief of damage. *Id*. To establish a "real interest," an opposer must have a "legitimate personal interest" in the opposition that gives them "a direct and personal stake" in the outcome. *Id.* at 1095 (Fed. Cir. 1999). Regarding the "reasonable" belief of damage requirement, one way to demonstrate the belief is reasonable is to "allege that others also share the same belief of harm from the proposed trademark." *Id*. at 1098.

Here, Curtin has not demonstrated a "real interest," as she merely alleges that she is a "longtime collector of fairy-tale dolls." *See* Curtin's Br. at 23. UTH maintains that Curtin's status as a consumer is not sufficient to give her "a direct and personal stake" in the outcome, as this would give anyone who has purchased a fairy-tale-themed doll grounds to oppose a trademark application. Further, Curtin

has not sufficiently alleged that her belief of harm is "reasonable." The harms that

Curtin alleges include fewer new dolls, increased costs, and reduced competition.

*See* Curtin's Br. at 40. These alleged harms are not reasonable, as they are all

remote harms that require numerous events to take place before they could

possibly occur. Likewise, the petition Curtin relies on featuring signatures from

alleged doll collectors and sellers is also based purely on speculation and

unsupported by evidence. *Id*. at 11. As such, Curtin is unable to demonstrate a

*reasonable* basis in fact for her alleged harms. Accordingly, Curtin would be

unable to satisfy the *Ritchie* standard even if it were the applicable test, which it is

not.

## II.     The Board Properly Applied the *Lexmark* Standard in Finding Curtin is Not Entitled to a Statutory Cause of Action to Oppose UTH's Trademark

The Board properly applied the *Lexmark* standard and found that Curtin is

not entitled to oppose UTH's trademark application. Under *Lexmark*, to establish

entitlement to a statutory cause of action under the Lanham Act, a petitioner must

show both (1) an interest that falls within the zone-of-interests protected by the

statute; and (2) a reasonable belief of damage that would be caused by registration

of the mark (proximate causation). *Lexmark Int'l, Inc. v. Static Control

Components, Inc.*, 572 U.S. 118, 129 (2014).

The first prong of the *Lexmark* test, the zone of interests test, "applies to all

statutory causes of action" and its purpose is to "foreclose suit only when a

plaintiff's interests are so marginally related to or inconsistent with the purposes

implicit in the statute that it cannot reasonably be assumed that Congress

authorized that plaintiff to sue." *Corcamore, LLC*, 978 F.3d at 1305 (*citing*

*Lexmark*, 572 U.S. at 130). The Court in *Lexmark* stated "[i]dentifying the interests

protected by the Lanham Act, however, requires no guesswork, since the Act

includes an 'unusual, and extraordinarily helpful,' [detailed statement of the

statute's purposes.]" 572 U.S. at 131 (*citing H.B. Halicki Productions v. United*

*Artists Communications, Inc.*, 812 F.2d 1213, 1214 (CA9 1987)).

The Lanham Act's stated goal "is to regulate commerce … [and] to protect

persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127.

Further, as the Board noted, "…the Trademark Act regulates commerce and

protects plaintiffs with commercial interests." Appx7. The Federal Circuit has also

repeatedly held that a commercial interest is required to satisfy the zone-of-

interests requirement. *Corcamore*, 978 F.3d at 1305-06 ("Also like the zone-of-

interests test, a petitioner can satisfy the real-interest test by demonstrating a

commercial interest."); *Empresa Cubana*, 753 F.3d at 1275 (finding "Cubatabaco

has a legitimate commercial interest in the COHIBA mark" because its trademark

application was refused due to potential confusion with the registered mark);

*Meenaxi Enter. v. Coca-Cola Co.*, 38 F.4th 1067, 1077 (Fed. Cir. 2022) (finding no

entitlement to a statutory cause of action because "Coca-Cola failed to explain how its supposed reputational injury adversely affected its commercial interests other than to speculate that a consumer dissatisfied with Meenaxi's products might blame Coca-Cola").

The second prong of the test "generally applies to all statutory causes of action, even where a statute does not expressly recite a proximate-causation requirement." *Corcamore, LLC*, 978 F.3d at 1305 (*citing Lexmark*, 572 U.S. at 132). A party can demonstrate proximate causation if it shows "a reasonable belief of damage" if the trademark proceeds to registration. *Id*. at 1306. The proximate cause requirement can be met by showing there is a "direct connection between the belief of damage and the registered mark." *Id.* (*citing Lexmark*, 572 U.S. at 133). The proximate causation requirement is intended to "bar[s] suits for alleged harm that is 'too remote' from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Lexmark*, 572 U.S. at 133.

## A. Curtin Cannot Satisfy the Zone-of-Interests Test

Here, Curtin has alleged *no* commercial interest in this proceeding and reiterates that she is solely a consumer of dolls. Curtin has not alleged that she is a doll manufacturer, retailer, or other competitor of UTH in the relevant industry. Instead, Curtin argues that a commercial interest is not required to oppose a

trademark application under § 1063 because "[a] consumer's interest in preventing registration of a generic term falls well within the zone of interests protected by § 1063, especially those of a long-time collector of goods sold in association with the generic term." *See* Curtin's Br. at 36.

The issue in this appeal pertains solely to whether Curtin is entitled to oppose UTH's trademark application, not the registrability of the mark at issue. Further, Curtin does not point to any case law decided post-*Lexmark* that found a party satisfied the zone-of-interests tests without having a commercial interest.

In her brief, Curtin attempts to detract from her lack of commercial interest in this matter by referencing several unrelated provisions of the Lanham Act. Curtin argues that "[t]here is no basis for the Board's determination that only commercial interests count for opposition proceedings." *See* Curtin's Br. at 19. However, as explained above, there is a clear line of precedent establishing that a plaintiff must have a real commercial interest to be entitled to bring a statutory cause of action.

Curtin first argues that "preventing the registration of a generic term falls well within the zone of interests protected by § 1063." *Id.* at 36. While generic marks are not protectable under the Lanham Act, that issue has no bearing on the test under *Lexmark* for entitlement to a statutory cause of action. Curtin's arguments regarding alleged genericness ignore the fact that the purpose of this

appeal is to determine *whether Curtin is entitled to oppose UTH's mark at all*.

Whether UTH's mark is protectable is a question to be decided only if it is

determined that Curtin is entitled to bring the opposition.[1]

Curtin next argues that the Lanham Act has historically had provisions that

are "concerned with more than injury among competitors," including the bar on

immoral, deceptive, or scandalous marks in § 1052(a). However, Section 2(a) of

the Lanham Act has been deemed unconstitutional and is no longer grounds for

opposing a trademark registration. *See Iancu v. Brunetti*, 139 S.Ct. 2294, 2297

(2019). Accordingly, any reliance on this provision of the Lanham Act (and the

motivations for its existence) is moot.

Curtin also argues that the Lanham Act features a provision barring marks

containing "the flag or coat of arms or other insignia" of a country, state, or

municipality under § 1052(b) and that "[t]hese bases for refusing to register a mark

demonstrate that commercial interests are not the only interests that matter." *See*

Curtin's Br. at 38.  However, Curtin appears to conflate the determination of

entitlement to a statutory cause of action with grounds for registrability of a mark.

It is unclear how § 1052(b) is relevant to the entitlement to a statutory cause of

action analysis, as it merely bans registration of marks based on their content.

---

[1] Although it is not relevant to this appeal, UTH's RAPUNZEL mark is not generic, as RAPUNZEL is not the generic name for the genus of goods, namely, dolls.

Here, Curtin has not brought forth any claim under § 1052(b).

In her brief, Curtin states, "The fact that Curtin does not have a commercial interest is not dispositive." *Id*. However, as explained above, Curtin's lack of commercial interest is precisely the reason she is not entitled to oppose UTH's trademark registration because she cannot meet the first prong of the *Lexmark* test.

### B. Curtin has not demonstrated her belief of damage is reasonable

The second prong of the *Lexmark* standard, proximate causation, asks "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." 572 U.S. at 133. The proximate cause test is meant to prevent "suits for alleged harm that is 'too remote' from the unlawful conduct." *Corcamore,* 978 F.3d at 1306 (*citing Lexmark,* 572 U.S. at 133). Here, even if Curtin met the first prong under *Lexmark*, Curtin has failed to show that her belief of harm is reasonable or close enough to the types of harm the statute aims to prevent. Curtin alleges that if UTH "were allowed to register its generic mark, consumers would *likely* face increased costs for goods associated with Rapunzel merchandise." (emphasis added); *See* Curtin's Br. at 40.

Each of the alleged harms that Curtin cites, including increased consumer costs, reduced marketplace competition, and fewer new dolls and toys based on the fairy tale character RAPUNZEL, are purely speculative and unsupported by any evidence. In *Lexmark*, the Court held that, to demonstrate proximate cause, a party

"must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." 572 U.S at 134. Further, the Court noted the proximate cause showing is meant to prevent "suits for alleged harm that is 'too remote' from the defendant's unlawful conduct" which "is ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* (*citing Holmes*, 503 U.S. at 268-269 (1992)).

As discussed above, Curtin has no commercial interest at stake in this matter. The harms she alleges consist of speculative tertiary effects of registration, namely, reduced marketplace competition, increased cost of RAPUNZEL merchandise, and fewer interpretations and creations of RAPUNZEL dolls. *See* Curtin's Br. at 44. UTH notes that each of these harms are purely speculative, remote, and not based on fact. As the Board stated, "This type of speculation, unsupported by any evidence, is not a basis upon which we can find that Opposer is entitled to a statutory cause of action." Appx12-13.

Curtin further argues that her efforts to prevent registration of UTH's RAPUNZEL mark "are closely linked to the Lanham Act's bar on generic marks." *See* Curtin's Br. at 44. As discussed above, Curtin attempts to bypass the determination of her entitlement to a statutory cause of action by alleging that

UTH's mark is generic, which is not currently at issue. Curtin further argues that "Curtin amply supported a reasonable basis to believe sellers would be injured and that she would be injured as a result." *Id*. at 45. However, Curtin's lack of commercial interest and consumer status position her as precisely the type of third party whose alleged harms do not fall within the ambit of the statute.

## CONCLUSION AND RELIEF SOUGHT

Curtin has failed to prove that she is entitled to a statutory cause of action to oppose UTH's trademark application under the proper *Lexmark* standard. Accordingly, the Court should affirm the Board's decision.

Dated this 19th day of January, 2024.

Respectfully submitted,

_____
Erik M. Pelton
Counsel for Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-2140

**Short Case Caption:** Curtin v. United Trademark Holdings, Inc.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,458 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/19/2024

Signature: /ErikMPelton/

Name: Erik M. Pelton