23-2140

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

**REBECCA CURTIN,**
*APPELLANT,*

**V.**

**UNITED TRADEMARK HOLDINGS, INC.,**
*APPELLEE.*
_____

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board No. 91241083.
_____

**BRIEF FOR THE DIRECTOR – U.S. PATENT AND TRADEMARK OFFICE
AS *AMICUS CURIAE* IN SUPPORT OF APPELLEE AND AFFIRMANCE**

FARHEENA Y. RASHEED
Acting Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark
   Litigation

SARAH E. CRAVEN
MARY BETH WALKER
Associate Solicitors

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the
U.S. Patent & Trademark Office*

February 21, 2024

# TABLE OF CONTENTS

I.     STATEMENT OF INTEREST ........................................................... 1

II.     STATEMENT OF THE ISSUES ..................................................... 1

III.     STATEMENT OF THE CASE ........................................................ 2

      A.     Statutory Background ............................................................ 3

      B.     Factual Background .............................................................. 5

           1.     Curtin opposed the registration of UTH's RAPUNZEL mark as generic or merely descriptive, alleging interests only as a consumer .......................................................... 5

           2.     The Board applied controlling precedent to conclude that Curtin, as a consumer, is not among the class of people authorized by statute to oppose the registration of a mark as generic or merely descriptive ...................................... 6

IV.     SUMMARY OF THE ARGUMENT ............................................. 10

V.     STANDARD OF REVIEW ........................................................... 12

VI.     ARGUMENT ................................................................................ 12

      A.     The Board correctly followed this Court's precedent in applying *Lexmark*'s zone-of-interests test to decide whether Curtin is among the class of people authorized by statute to oppose a mark's registration. ............ 12

      B.     The Board correctly decided under this Court's precedent that Curtin, as a consumer, does not fall within the class of people authorized by statute to bring the opposition at issue here .......................................... 17

      C.     This case does not present the question of whether the RAPUNZEL mark is properly registrable. ....................... 24

VII.     CONCLUSION ............................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Abcor Dev. Corp., In re*,
   588 F.2d 811 (C.C.P.A 1978) ...................................................... 9, 18, 20

*Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*,
   965 F.3d 1370 (Fed. Cir. 2020) ...................................................... 14, 17

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*,
   531 F.2d 11 (2d Cir. 1975) ................................................................18

*Corcamore, LLC v. SFM, LLC*,
   978 F.3d 1298 (Fed. Cir. 2020) ............................................... passim

*Dial-A-Mattress Operating Corp., In re*,
   240 F.3d 1341 (Fed. Cir. 2001) ........................................................20

*Empresa Cubana Del Tabaco v. General Cigar Co.*,
   753 F.3d 1270 (Fed. Cir. 2014) ................................................... 12, 20

*Federated Foods, Inc. v. Fort Howard Paper Co.*,
   544 F.2d 1098 (C.C.P.A. 1976) ........................................................21

*Golden Gate Salami Co. v. Gulf States Paper Corp.*,
   332 F.2d 184 (C.C.P.A. 1964) ..........................................................21

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*,
   782 F.2d 987 (Fed. Cir. 1986) ............................................................3

*Iancu v. Brunetti*,
   139 S. Ct. 2294 (2019) ......................................................................22

*Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*,
   823 F.2d 490 (Fed. Cir. 1987) ..........................................................20

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ................................................................ passim

*Lipton Indus., Inc. v. Ralston Purina Co.*,
   670 F.2d 1024 (C.C.P.A. 1982) ........................................................21

*Matal v. Tam*,
  582 U.S. 218 (2017) ...........................................................22

*Meenaxi Enterprise, Inc. v. Coca-Cola Co.*,
  38 F.4th 1067 (Fed. Cir. 2022) ..................................... 13, 17

*Merrill Lynch, Pierce, Fenner, & Smith, Inc., In re*,
  828 F.2d 1567 (Fed. Cir. 1987) ............................... 3, 18, 20

*Newell Companies, Inc. v. Kenney Mfg. Co.*,
  864 F.2d 757 (Fed. Cir. 1988) ...........................................16

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014) ...........................................................24

*Qualitex Co. v. Jacobson Prods. Co.*,
  514 U.S. 159 (1995) ...........................................................24

*Ritchie v. Simpson*,
  170 F.3d 1092 (Fed. Cir. 1999).................................. passim

*Stereotaxis, Inc., In re*,
  429 F.3d 1039 (Fed. Cir. 2005)..........................................19

*United Trademark Holdings, Inc., In re*,
  122 U.S.P.Q.2d 1796 (T.T.A.B. 2017) ..............................25

*Young v. AGB Corp.*,
  152 F.3d 1377 (Fed. Cir. 1998)................................... 14, 16

**Statutes**

15 U.S.C. § 1052(a)............................................................. 3, 21

15 U.S.C. § 1052(b)............................................................. 3, 23

15 U.S.C. § 1052(e)(1).......................................................... 3, 21

15 U.S.C. § 1062(a)............................................................ 3, 4, 5

15 U.S.C. § 1063................................................................. passim

15 U.S.C. § 1063(a)...................................................................4

15 U.S.C. § 1063(b).....................................................................4

15 U.S.C. § 1064................................................................. passim

15 U.S.C. § 1067(a).....................................................................4

15 U.S.C. § 1071(a)...................................................................10

15 U.S.C. § 1125(a)............................................................. passim

15 U.S.C. § 1127................................................................. passim

28 U.S.C. § 1295(a)(4)(B)...........................................................10

**Other Authorities**

Trademark Manual of Examining Procedure § 706.01 (Nov. 2023)....... 4, 24

Trademark Trial and Appeal Board Manual Procedure § 309.03(c)(1)
(June 2023).......................................................................4

Trademark Trial and Appeal Board Manual Procedure § 515 ...................5

# I.    STATEMENT OF INTEREST

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, the Director of the United States Patent and Trademark Office ("USPTO") respectfully submits this brief as *amicus curiae* in support of appellee and affirmance. The USPTO, an agency of the United States Department of Commerce, is the agency responsible for, *inter alia*, the registration of trademarks under the Lanham (Trademark) Act, Pub. L. No. 79-489, 60 Stat. 427 (July 5, 1946), 15 U.S.C. § 1051 *et seq.* This appeal concerns the proper interpretation of 15 U.S.C. § 1063, and who may oppose the registration of a trademark as either generic or merely descriptive under the relevant statutory provisions of the Lanham Act. The USPTO is invested in the proper interpretation of the Lanham Act and in ensuring that oppositions to the registration of generic or merely descriptive marks under the Act serve to protect legitimate commercial interests.

# II.    STATEMENT OF THE ISSUES

Curtin appeals from the Board's decision that she is not among the class of people authorized by statute to oppose United Trademark Holdings ("UTH")'s application to register RAPUNZEL for dolls and toy figures. The Board, following this Court's precedent, applied the analytical framework

1

set out by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), in which the class of people authorized by statute to bring a given proceeding is determined by reference to the zone of interests protected by that proceeding. Applying that test and this Court's precedents, the Board decided that the specific proceeding at issue here—an opposition to the registration of a mark on the grounds that the mark is generic or merely descriptive—protects commercial interests, not consumer interests. The Board thus determined that Curtin, who asserts only consumer interests, does not fall within the class of people authorized by 15 U.S.C. § 1063 to bring the opposition proceeding here.

The Director files this amicus brief in support of the Board's decision. The question presented is whether the Board correctly decided under this Court's precedents that Curtin is not among the class of people authorized by 15 U.S.C. § 1063 to oppose the registration of UTH's mark as generic or merely descriptive. For the reasons discussed below, the Court should affirm the Board's decision.

## III.  STATEMENT OF THE CASE

This appeal arises from a trademark opposition proceeding under 15 U.S.C. § 1063 brought by Curtin against UTH's application to register RAPUNZEL for dolls and toy figures. *See* Appx2; Curtin's Opening Brief ("Br.")

at 10. The Board dismissed Curtin's opposition. Appx13. This appeal followed.

## A.    Statutory Background

The Lanham Act provides "for the registration and protection of trademarks used in commerce." Lanham (Trademark) Act, Pub. L. No. 79-489, 60 Stat. 427 (July 5, 1946), 15 U.S.C. § 1051 *et seq*. The statute establishes conditions for refusing to register trademarks on certain grounds, including if a mark is "deceptive," uses a "flag or coat of arms" of a state, or is "merely descriptive" of the goods at issue. 15 U.S.C. § 1052(a), (b), (e)(1). "[M]erely descriptive" marks include "generic" terms that consist of "the common descriptive name of a class of goods or services." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986). Generic terms are incapable of denoting a unique source and are not registrable because they fail to meet the statutory definition of a trademark in 15 U.S.C. § 1127. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987) ("Generic terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status.").

When an applicant applies to register a trademark, the application undergoes review at the USPTO to establish the mark's eligibility for registration. 15 U.S.C. § 1062(a). If "it shall appear that the applicant is entitled

to registration," the mark is published in the Official Gazette. *Id*. Upon publication, the statute authorizes "[a]ny person who believes that he [or she] would be damaged by the registration of a mark" to "file an opposition." *Id*. § 1063(a).

If a timely opposition is filed, the Director "shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration." *Id*. § 1067(a). Grounds for opposing the registration of a mark include any ground for refusing the registration. Trademark Trial and Appeal Board Manual Procedure ("TBMP") § 309.03(c)(1) (Jun. 2023) ("A plaintiff may raise any available statutory ground for opposition or cancellation that negates the defendant's right to registration.").[1] For a use-based application (like UTH's here), if an opposition to registration is unsuccessful, the mark generally proceeds to registration. *See* 15 U.S.C. § 1063(b). The Office may, however, "issue a new refusal" if "necessary to do so to prevent the issuance of a registration that would violate the Trademark Act." Trademark Manual of Examining Procedure ("TMEP") § 706.01 (Nov. 2023)[2]; *see*

---

[1] *available at* https://tbmp.uspto.gov/RDMS/TBMP/current#/current/sec-bdacef53-7b72-4ca5-8ceb-215e4afda588.html

[2]*available at* https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-700d1e545.html.

*also* TBMP § 515.[3] Following registration, the statute authorizes "any person who believes that he [or she] is or will be damaged … by the registration of a mark" to initiate a proceeding to cancel the registration of that mark. 15 U.S.C. § 1064.

### B.  Factual Background

#### 1.  Curtin opposed the registration of UTH's RAPUNZEL mark as generic or merely descriptive, alleging interests only as a consumer.

UTH filed a trademark application to register the mark RAPUNZEL, in standard characters, for dolls and toy figures. Appx2; Br. at 10. After the USPTO published the mark under § 1062(a), Curtin filed a notice of opposition under § 1063.  Curtin's opposition alleged that RAPUNZEL is not registrable because it "is generic for and merely descriptive of the identified goods," i.e., "dolls," including long-haired dolls. Appx2; Br. at 9.

Curtin asserted that registration of the challenged mark would harm her interests as a consumer. *See* Appx3-5; Br. at 10-11. Specifically, Curtin alleged that she is "a consumer who participates amongst other consumers in the marketplace for dolls and toy figures of fairytale characters, including Rapunzel." Appx3. And she claimed that she and "other consumers will be

---

[3]*available    at*   https://tmep.uspto.gov/RDMS/TBMP/current#/current/sec-2f6763a6-5c9c-430d-87c5-992ed8d319ef.html.

denied access to healthy marketplace competition" and "likely face an increased cost of goods" for "products that represent Rapunzel if private companies are allowed to trademark the name of a famous fairy tale character in the public domain." Appx3 (internal quotations omitted); *see also* Appx4-5; Br. at 10-11.

> ### 2. The Board applied controlling precedent to conclude that Curtin, as a consumer, is not among the class of people authorized by statute to oppose the registration of a mark as generic or merely descriptive.

The Board decided that Curtin, as a mere consumer, was not statutorily entitled to oppose a registration under 15 U.S.C. § 1063 on the grounds that a mark is generic for or merely descriptive of a class of goods. *See* Appx6. In deciding that Curtin could not bring a proceeding under § 1063, the Board first determined that the class of people authorized by the statute to oppose a registration is controlled by the zone-of-interests test set out by the Supreme Court in *Lexmark*, 572 U.S. 118, and applied by this Court in a cancellation proceeding under 15 U.S.C. § 1064 in *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303-05 (Fed. Cir. 2020). Appx5-6; Appx10.

*Lexmark* involved a district court suit for false advertising under 15 U.S.C. § 1125(a), § 43(a) of the Lanham Act. 572 U.S. at 122. That provision states that a false-advertising claim may be brought by "any person who

believes that he or she is or is likely to be damaged" by the defendant's false advertising. 15 U.S.C. § 1125(a). In *Lexmark*, the Supreme Court held that this provision did not extend to literally "all factually injured plaintiffs," but rather "only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked'" (572 U.S. at 129) as determined by traditional principles of statutory interpretation (*id.* at 128). Then, turning to the enumerated purposes of the Lanham Act in 15 U.S.C. § 1127, the Court found that only one was relevant to a typical false-advertising claim: "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition." *Id.* at 131 (quoting 15 U.S.C. § 1127). The Court thus held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. As the Court stated, "[a] consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act." *Id.* at 132.

The Board here, looking to *Lexmark* and this Court's cases applying *Lexmark* in analogous circumstances, similarly rejected an overly expansive reading of 15 U.S.C. § 1063 in favor of a reading informed by application of

the zone-of-interests test. Appx6. The Board emphasized the textual simi-
larity between § 1063, which authorizes opposition by "[a]ny person who be-
lieves that he [or she] would be damaged by the registration of a mark," and
the false-advertising provision at issue in *Lexmark*. Appx6. And the Board
emphasized this Court's holding that there is "no principled reason why the
analytical framework articulated by the Court in *Lexmark* should not apply"
to determine the class of people who may seek cancellation of a mark under
the textually similar provision of § 1064. Appx10 (quoting *Corcamore*, 978
F.3d at 1305). The Board thus concluded that it would determine the scope
of those who are authorized to oppose the registration of a mark on a par-
ticular ground under § 1063 by determining "whose interests 'fall within the
zone of interests protected by the law invoked.'" Appx6-7 (quoting *Lexmark*,
572 U.S. at 129).

Next, applying *Lexmark*'s zone-of-interests test, the Board decided
that a person must have "commercial interests" at stake to oppose a regis-
tration on the grounds that a mark is generic or merely descriptive. Appx7.
In reaching that decision, the Board again followed *Lexmark* and looked to
the Lanham Act's identified interests listed in 15 U.S.C. § 1127. Appx7. The
Board determined that Curtin's "grounds for opposition in this case" impli-
cated the "Act's 'intent' to 'protect persons engaged in ... commerce against

8

unfair competition.'" Appx7 n.6 (quoting 15 U.S.C. § 1127). The Board found support in this Court's precedent (Appx8-9), including the Court's explanation that a "major reason" for not registering merely descriptive marks was "to prevent the owner of a [merely descriptive] mark from inhibiting competition" (Appx7 n.6 (quoting *In re Abcor Dev. Corp.*, 588 F.2d 811, 813 (C.C.P.A 1978)). The Board then decided that Curtin, because she alleged interests only as a consumer of fairytale-themed products like Rapunzel, failed to allege the requisite commercial interest to show that she fell within the class of people authorized by § 1063 to bring the opposition proceeding at issue here. *See* Appx10; Appx13. The Board also decided that the alleged harm was "entirely speculative" and "too remote" under *Lexmark*'s proximate-causation test. Appx11-13.

The Board thus concluded that Curtin had not met her burden of proving that she is entitled to invoke the statute authorizing opposition proceedings, and dismissed Curtin's opposition. Appx13. Since the Board concluded that Curtin was not entitled to bring her opposition, the Board did not reach the merits of Curtin's allegations that UTH's RAPUNZEL mark is not registrable because it is generic for or merely descriptive of the identified goods. *See* Appx1-2.

Curtin appealed the Board's decision to this Court. The Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a).

## IV.  SUMMARY OF THE ARGUMENT

The Board correctly decided that Curtin is not among the class of people authorized by statute to oppose the registration of UTH's mark as generic or merely descriptive. On appeal, Curtin challenges the Board's decision to apply *Lexmark*'s zone-of-interests framework and its decision under that framework that Curtin's interests as a consumer do not fall within the zone of commercial interests protected by the statutory provisions at issue here. This Court's precedent confirms both decisions.

First, the Board properly followed precedent in employing *Lexmark*'s framework in an opposition proceeding. The Board correctly decided that, as with the similar language at issue in 15 U.S.C. § 1125(a) in *Lexmark* and 15 U.S.C. § 1064 in *Corcamore*, 15 U.S.C. § 1063's language authorizing an opposition by "[a]ny person who believes that he [or she] would be damaged by the registration of a mark" extends only to persons whose interests fall within the zone of interests protected by the relevant statutory provisions. Every one of Curtin's arguments on appeal—that § 1063's language alone governs or that the Court's decision in *Ritchie v. Simpson*, 170 F.3d 1092

10

(Fed. Cir. 1999) controls the analysis and yields a different outcome here—are precluded by this Court's precedent.

Second, the Board correctly decided under *Lexmark*'s zone-of-interests test that Curtin, by alleging consumer and not commercial interests, failed to demonstrate that she is among the class of people who may invoke 15 U.S.C. § 1063 to oppose the registration of UTH's mark as generic or merely descriptive. Curtin argues that the Board misread *Lexmark* as deciding that all provisions of the Lanham Act, including those not at issue in *Lexmark*, protect only against unfair competition (and thus invoke only commercial interests). Not so. The Board here analyzed the specific interests at stake in this proceeding—an opposition to the registration of a mark as generic or merely descriptive—and concluded, based on the Court's precedent, that the protected interests are commercial. Other opposition grounds may involve other interests, as this Court recognized in *Ritchie* in deciding entitlement to invoke § 1063 for the now-invalidated prohibition on the registration of disparaging marks. Accordingly, the Court should not decide this case more broadly than necessary and should focus on the interests protected by the specific opposition grounds that Curtin seeks to invoke here.

Finally, because the Board decided that Curtin could not bring an opposition proceeding against UTH's RAPUNZEL mark on the grounds that

it is generic or merely descriptive, the Board did not reach the merits of Curtin's allegations that the mark is not registerable on these grounds. The merits are thus not before the Court, and the Board's decision to dismiss Curtin's opposition proceeding should be affirmed regardless of the merits of her opposition.

## V.    STANDARD OF REVIEW

This Court reviews *de novo* the question of whether a person seeking to oppose or cancel registration of a mark falls within the class of persons authorized to do so by statute. *Empresa Cubana Del Tabaco v. General Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014) (cancellation case).

## VI.   ARGUMENT

**A.    The Board correctly followed this Court's precedent in applying *Lexmark*'s zone-of-interests test to decide whether Curtin is among the class of people authorized by statute to oppose a mark's registration.**

Here, to determine whether Curtin is authorized to oppose a registration under 15 U.S.C. § 1063, the Board correctly followed this Court's precedent and applied *Lexmark*'s zone-of-interests test. Appx5-6 (citing *Corcamore*, 978 F.3d at 1303-05); Appx10 (same). This Court's precedents likewise squarely address and reject every one of Curtin's challenges to the Board's decision on appeal. *See* Br. at 24-33.

In its decision, the Board followed this Court's holding in *Corcamore.* Appx5-6; Appx10. *Corcamore* addressed who may bring a proceeding seeking to cancel the registration of a mark under 15 U.S.C. § 1064. That provision, similar to the opposition provision at issue here and the false-advertising provision at issue in *Lexmark*, authorizes "any person who believes that he [or she] is or will be damaged … by the registration of a mark" to petition to cancel that registration. In *Corcamore*, the Court decided that there is "no principled reason why the analytical framework articulated by the Court in *Lexmark* should not apply" to determine the class of people who may seek cancellation of a mark under § 1064. *Corcamore*, 978 F.3d at 1305. Emphasizing the "similar statutory language" between 15 U.S.C. § 1125(a)'s false-advertising provision and § 1064, the Court held that *Lexmark*'s zone-of-interests and proximate-causation requirements control the analysis under § 1064 for a cancellation proceeding. *Meenaxi Enterprise, Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072-73 (Fed. Cir. 2022) (quoting the holding in *Corcamore*, 978 F.3d at 1305).

The Board properly applied precedent governing who may seek to cancel a registration under 15 U.S.C. § 1064 to the materially identical provisions for who may seek to oppose a registration under § 1063. As this Court has held, "[t]he linguistic and functional similarities between the opposition

and cancellation provisions of the Lanham Act mandate that" this Court "construe the requirements of these provisions consistently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998). On this basis, this Court more recently held that the same test applies to determine who may invoke cancellation and opposition proceedings. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373-74 (Fed. Cir. 2020). Precedent therfore requires application of the zone-of-interests analysis to determine the class of people authorized by statute to bring an opposition proceeding.

On appeal, Curtin first asserts that 15 U.S.C. § 1063's language alone expressly authorizes her to oppose UTH's registration. Br. at 21-22. But this Court has never interpreted § 1063's language to allow literally any person believing themselves to be damaged in some way by the registration of a mark to file an opposition, as even Curtin admits. Br. at 22. The Court has always required an opposer to prove a "real interest," i.e., a "legitimate personal stake," in the outcome of the opposition, and a "reasonable basis" for a belief in damages. *Ritchie*, 170 F.3d at 1095 (citing cases). This longstanding precedent forecloses Curtin's argument that her ability to oppose a registration is settled entirely by being a "person" under § 1063 who believes she will be damaged. Br. 21-22, 24.

14

This Court's precedent likewise forecloses Curtin's argument that, rather than *Lexmark*'s zone-of-interests test, the Board should have applied an assertedly distinct test drawn from *Ritchie*. Br. at 22-24. In *Corcamore*, this Court considered and rejected that precise argument in holding "that the *Lexmark* analytical framework is the applicable standard for determining whether a person is eligible under § 1064 to bring a petition for the cancellation of a trademark."[4] 978 F.3d at 1303. *Corcamore* examined *Ritchie* and other pre-*Lexmark* circuit precedent and concluded that there was "no meaningful, substantive difference in the analysis used in *Lexmark*" and the Court's prior caselaw (*id.* at 1305), as Curtin acknowledges (Br. at 39). Thus, there is no conflict between applying *Lexmark*'s zone-of-interests test in this case and any prior precedent of this Court.

Curtin next challenges this Court's precedent, arguing that *Lexmark* should be limited to causes of action brought in court and should not apply

---

[4] As such, the cases cited by Curtin from other circuits are irrelevant to the proper disposition of this administrative proceeding under this Court's precedent. Br. at 26. To the extent Curtin is suggesting that the Board improperly applied Article III's case-and-controversy requirements to this case rather than analyze the class of people authorized to bring an opposition proceeding (*see* Br. at 21, 26-27 n.1), the Board did not. The *Lexmark* framework relates only to the latter, as this Court has recognized. *Corcamore*, 978 F.3d at 1303. And no party asserts that Article III's requirements apply to administrative proceedings before the USPTO.

to administrative trademark proceedings. Br. at 30-33. But this Court rejected that *Lexmark* was so limited in *Corcamore*, holding that the "traditional principles of statutory interpretation articulated in *Lexmark*" apply to the provisions of § 1064 authorizing administrative trademark cancellation proceedings. 978 F.3d at 1304-05. That holding it is the binding precedent of this Court, and cannot be overruled except by an *en banc* decision of the Court. *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned [e]*n banc*.").

Curtin also tries to distinguish *Corcamore* based on it arising from a cancellation proceeding under § 1064, rather than an opposition proceeding under § 1063. Br. at 31-32. But, yet again, that argument flies in the face of precedent. As already noted above, the Court has long held that "[t]he linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that" the Court "construe the requirements of these provisions consistently." *Young*, 152 F.3d at 1380. And the Court has held that "[t]he statutory requirements to cancel registration of a mark under § 1064 are substantively equal to the statutory require-

ments to oppose the registration of a mark under § 1063." *Australian Therapeutic Supplies*, 965 F.3d at 1373-74. Indeed, as discussed above, the Court found it fitting that *Lexmark*'s analysis should apply in a cancellation proceeding given the "similar statutory language" between § 1125(a), the false-advertising provision at issue in *Lexmark*, and § 1064. *Meenaxi*, 38 F.4th at 1072-73. Similar statutory language governs oppositions as well. 15 U.S.C. § 1063.

In sum, precedent, supported by the statutory text of 15 U.S.C. § 1063, dictated the Board's decision here: that *Lexmark*'s zone-of-interests analysis determines the class of people authorized by § 1063 to bring an opposition proceeding against the registration of a mark.

### B. The Board correctly decided under this Court's precedent that Curtin, as a consumer, does not fall within the class of people authorized by statute to bring the opposition at issue here.

Precedent also confirms the Board's decision under *Lexmark*'s zone-of-interests test that Curtin's interests as a consumer do not fall within the zone of interests protected by the opposition proceeding at issue here. *See* Appx6-10. Because this decision is sufficient to affirm the Board's dismissal of Curtin's opposition, the Director does not address the Board's case-specific proximate-cause analysis.

17

The Board, applying the zone-of-interests test, first noted that, as discussed in *Lexmark*, the interests protected by the Lanham Act are generally identified in § 1127. Appx7. Considering those interests, the Board concluded that Curtin's "grounds for opposition in this case"—that the RAPUNZEL mark is generic for or merely descriptive of the identified dolls—"arise out of the Trademark Act's 'intent' to 'protect persons engaged in … commerce against unfair competition.'" Appx7 n.6 (quoting 15 U.S.C. § 1127). For support, the Board cited this Court's explanation that a "major reason" for not protecting merely descriptive marks is "to prevent the owner of a [merely descriptive] mark from inhibiting competition." *Id.* (quoting *Abcor*, 588 F.2d at 813).[5] The Board then decided that, as in *Lexmark*, where the interests in protecting against unfair competition by prohibiting false advertising were "commercial interest[s] in reputation or sales," not those of consumers, the interests in protecting against unfair competition by prohib-

---

[5] The same reason applies to generic terms. As the Court explained in *Merrill Lynch*, "[t]o allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his [or her] goods as what they are." 828 F.2d at 1569 (quoting *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975)).

iting the registration of merely descriptive marks were also commercial interests, not consumer interests. Appx7-8 (quoting *Lexmark*, 572 U.S. at 131-32). Accordingly, the Board concluded that Curtin, who asserted interests only as a consumer of fairytale-themed dolls, did not establish a prerequisite commercial interest to oppose the registration of UTH's mark as generic or merely descriptive. Appx10-11.

Curtin argues that the Board misread *Lexmark* as having decided that protecting against unfair competition was the sole interest protected by all provisions of the Lanham Act, and thus the Board failed to assess the specific interests protected by her opposition under 15 U.S.C. § 1063. Br. at 35-38. But, as just discussed, the Board did assess the interests protected by an opposition on the grounds of a mark being merely descriptive and decided that those interests were commercial. Appx7 n.6. And the Board's decision is supported by precedent. *See* Appx8-9. As this Court has explained, the "major reasons for not protecting such [merely descriptive] marks are: (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products." *In re Stereotaxis, Inc.*, 429 F.3d 1039, 1042 (Fed.

19

Cir. 2005) (quoting *Abcor*, 588 F.2d at 813)); *see Jewelers Vigilance Comm.,
Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987) ("[W]here an op-
position is based on the descriptiveness of the mark sought to be registered,"
an "opposer in such case need only assert an equal right to use the mark for
the goods."). Similarly for a generic term, the Court has explained that to
allow registration "would grant the owner of the mark a monopoly, since a
competitor could not describe his [or her] goods as what they are." *In re Dial-
A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001) (quoting
*Merrill Lynch*, 828 F.2d at 1569).

Curtin does not cite a single case indicating that the purpose of allow-
ing opposition to the registration of a generic or merely descriptive mark is
to protect consumer interests. To the contrary, this Court's precedent, in-
cluding precedent under *Ritchie*'s pre-*Lexmark* real-interest test, likewise
supports the conclusion that the interests protected by the provisions of the
Lanham Act at issue in this case are commercial interests. *See, e.g., Corca-
more*, 978 F.3d at 1305-06 ("[L]ike the zone-of-interests test, a petitioner can
satisfy the real-interest test by demonstrating a commercial interest."); *Em-
presa Cubana*, 753 F.3d at 1274 (noting that a mistaken application of pre-
clusion principles in that case "would require" that the party seeking can-

cellation there "be seen as having no legitimate commercial interest sufficient to confer standing" to do so); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (C.C.P.A. 1982) (noting how a petitioner "proved a real commercial interest in its own marks" to show statutory standing for a cancellation proceeding); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1101 (C.C.P.A. 1976) ("Opposer's real commercial interest in protecting its registered marks is manifest."); *Golden Gate Salami Co. v. Gulf States Paper Corp.*, 332 F.2d 184, 188 (C.C.P.A. 1964) (explaining that, by "real interest," the Court "meant a personal commercial interest rather than the interest of a mere intermeddler").

Taking another tack, Curtin points to other purposes and statutory grounds for opposing the registration of a trademark. Specifically, Curtin asserts that another purpose identified by § 1127 is Congress's intent "to regulate commerce ... by making actionable the deceptive and misleading use of marks in ... commerce," and that this "interest is intimately tied to protecting consumers." Br. at 36. But Curtin's opposition here did not oppose UTH's registration of the RAPUNZEL mark on the grounds that it is deceptive or otherwise misleading under § 1052(a), but as generic or merely descriptive under § 1052(e)(1). *See* Appx2.

Nor does this case present allegations under any of the other provisions of the Lanham Act that Curtin cites (Br. at 38), including the ones at issue in *Ritchie*, on which Curtin relies (Br. at 22-23, 28-29). In *Ritchie*, this Court considered an opposition to register the marks O.J. SIMPSON and THE JUICE based on the statutory prohibitions on the registration of immoral, scandalous, or disparaging marks (later invalidated on First Amendment grounds by *Matal v. Tam*, 582 U.S. 218 (2017) and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019)). *Ritchie*, 170 F.3d at 1093-94. The opposer alleged that the marks were disparaging to those who hold traditional family values on the sanctity of marriage, and the Court held that the opposer, who stated that he too would suffer disparagement on that basis, had adequately alleged a real interest in the outcome of the opposition proceeding. *Id.* at 1097. Curtin, in contrast, does not allege any disparagement or reputational harm here. *See* Br. at 7-9; *see also* Brief *Amicus Curiae* of the George Washington University Law School at 10-12.

*Ritchie*'s analysis also does not support Curtin's broad assertion that all opposition proceedings are meant to protect the interest of consumers because "they concern whether trademark protections should be granted in the first place." Br. at 35-36. *Ritchie* addressed a specific ground—disparagement—for opposing the registration of a mark, which on its face has

nothing to do with protecting commercial interests. *Ritchie* did not address the grounds at issue here for opposing the registration of a mark as generic or merely descriptive—grounds that, as discussed above, the Court has repeatedly described as protecting commercial interests.

Indeed, given the potential for different provisions of the Lanham Act to protect different interests, the Court should resolve this case narrowly by focusing on the particular statutory grounds at issue here. The Court should not adopt UTH's broader position that a commercial interest is always required to satisfy the zone-of-interests test. *See* UTH's Response Brief at 18, 20-22. Other grounds for opposing or seeking to cancel the registration of a mark may or may not call for a different analysis, and may or may not protect different interests. *See, e.g.*, 15 U.S.C. § 1052(b) (disallowing registration of marks that consist of the "flag or coat of arms" of certain governments). Whether a zone-of-interests limitation applies in a particular administrative context, and whether the class of people who may seek administrative relief in a particular context is coextensive with the class of people who may sue in court, will depend on the language of the particular statute and the particular interests involved. And while Curtin asserts that trademark law exists to protect consumers' ability to distinguish among compet-

ing products (Br. at 36-37), the Supreme Court has explained that that instrumental goal is often served by rights provided only to competitors. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("Though in the end consumers also benefit from the Act's proper enforcement, the cause of action [for false advertising] is for competitors, not consumers."); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995) (noting consumers' interests in a trademark infringement case between competitors). Accordingly, the Court should affirm the Board's decision that, consistent with this Court's precedent, opposition proceedings seeking to challenge the registration of a mark as generic or merely descriptive protect an opposer's commercial, not consumer, interests. Appx7.

### C.   This case does not present the question of whether the RAPUNZEL mark is properly registrable.

Finally, this case does not present this Court with the question of whether the RAPUNZEL mark for the identified dolls and toy figures is properly registrable. *See* Appx1-2. The registrability (or not) of the mark at issue on appeal will remain before the USPTO regardless of the outcome of this appeal, and regardless of who may properly oppose a registration in a case like this one. And the Office may "issue a new refusal" to the registration of the mark if "it is necessary to do so to prevent the issuance of a registration that would violate the Trademark Act." TMEP § 706.01; s*ee In re*

24

*United Trademark Holdings, Inc.*, 122 U.S.P.Q.2d 1796 (T.T.A.B. 2017) (denying the registration of LITTLE MERMAID as merely descriptive for use with dolls) (precedential).

## VII.  CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decision that *Lexmark*'s analytical framework applies in opposition proceedings under the Court's precedent and that, under that framework, consumers like Curtin do not fall within the zone of interests protected by the Lanham Act's prohibition on the registration of marks that are generic or merely descriptive.

Dated: February 21, 2024          Respectfully submitted,

/s/  Sarah E. Craven
FARHEENA Y. RASHEED
Acting Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark
Litigation

SARAH E. CRAVEN
MARY BETH WALKER
Associate Solicitors

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the
U.S. Patent & Trademark Office*

# CERTIFICATE OF COMPLIANCE

I certify pursuant to FRAP 32(a)(7) that the foregoing Brief for the Director as *Amicus Curiae* complies with the type volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 5,340 as measured by the word-processing software used to prepare this brief.

Dated: February 21, 2024     Respectfully submitted,

/s/  Sarah E. Craven
Sarah E. Craven
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035