No. 23-2140

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

REBECCA CURTIN,

*Appellant*

v.

UNITED TRADEMARK HOLDINGS, INC.,

*Appellee*

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91241083

# REPLY BRIEF OF APPELLANT REBECCA CURTIN

JOHN C. STRINGHAM
MATTHEW A. BARLOW
DAVID R. TODD
RYAN C. MORRIS
WORKMAN NYDEGGER
60 E. South Temple St., Ste. 1000
Salt Lake City, UT 84111
(801) 533-9800

*Counsel for Appellant
Rebecca Curtin*

## CERTIFICATE OF INTEREST

The undersigned counsel certifies the following:

1. The full name of every party represented by the undersigned is:
**Rebecca Curtin**

2. The real party in interest represented by the undersigned is:
**Rebecca Curtin**

3. All parent companies and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:
**None**

4. The names of all law firms and the partners or associates that appeared for the parties now represented by the undersigned in the trial court or are expected to appear in this court (and who have not entered an appearance in this case) are:
**None**

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:
**None**

6. Any information required under Fed.R.App.P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):
**None**

DATED: March 12, 2024

*/s/ Matthew A. Barlow*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. The *Lexmark* Framework Does Not Govern Agency Opposition Proceedings. ........ 4

A. *Lexmark* Did Not Alter the Standard for Participating in Agency Proceedings, Let Alone Opposition Proceedings Under § 1063. ........ 5

B. This Court's Decisions Have Not Altered the Standard for Opposing Registrations Under § 1063. ........ 11

C. Curtin Satisfies *Ritchie*'s Standard for Opposing Registration under § 1063. ........ 17

II. Curtin Is Entitled To Oppose UTH's Registration Even Under The *Lexmark* Framework. ........ 18

A. Curtin's Interests Fall within the Lanham Act's Zone of Interests ........ 19

B. Curtin's Injuries Would Be Proximately Caused by the Alleged Violation of the Act. ........ 28

CONCLUSION ........ 30

CERTIFICATE OF SERVICE ........ 31

CERTIFICATE OF COMPLIANCE ........ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abcor Dev. Corp.*,
588 F.2d 811 (CCPA 1978) .......... 23

*Amoskeag Mfg. Co v. D. Trainer & Sons*,
101 U.S. 51 (1879) .......... 24

*Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*,
965 F.3d 1370 (Fed. Cir. 2020) .......... 15

*Belmora LLC v. Bayer Consumer Care AG*,
819 F.3d 697 (Fed. Cir. 2016) .......... 21, 22

*Corcamore, LLC v. SFM, LLC*,
978 F.3d 1298 (Fed. Cir. 2020) .......... *passim*

*Delaware & Hudson Canal Co. v. Clark*,
80 U.S. 311 (1871) .......... 24, 25

*Empresa Cubana Del Tabaco v. General Cigar Co.*,
753 F.3d 1270 (Fed. Cir. 2014) .......... 15, 21

*Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*,
194 F.3d 72 (D.C. Cir. 1999) .......... 8, 9, 10, 12

*FDRLST Media, LLC v. NLRB*,
35 F.4th 108 (3d Cir. 2022) .......... 9

*Federated Foods, Inc. v. Fort Howard Paper Co.*,
544 F.2d 1098 (CCPA 1976) .......... 22

*Gettman v. DEA*,
290 F.3d 430 (D.C. Cir. 2002) .......... 9

*Golden Gate Salami Co. v. Gulf States Paper Corp.*,
332 F.2d 184 (CCPA 1964) .......... 22

*Kastigar v. United States*,
406 U.S. 441 (1972) .......... 14

*Lexmark International, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2021) .......... *passim*

*Lipton Industries, Inc. v. Ralston Purina Co.*,
670 F.2d 1024 (CCPA 1982) .......... 22

*Meenaxi Enterprise, Inc. v. Coca-Cola Co.*,
38 F.4th 1067 (Fed. Cir. 2022) .......... 21, 22

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
469 U.S. 189 (1985) .......... 27

*Ritchie v. Simpson*,
170 F.3d 1092 (Fed. Cir. 1999) .......... *passim*

*Smith v. Orr*,
855 F.2d 1544 (Fed. Cir. 1988) .......... 14

*Strickland v. United States*,
423 F.3d 1335 (Fed. Cir. 2005) .......... 10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) .......... 30

*Young v. AGB Corp.*,
152 F.3d 1377 (Fed. Cir. 1998) .......... 13, 14

**Statutes**

15 U.S.C. § 1063 .......... *passim*

15 U.S.C. § 1064 .......... *passim*

**Other Authorities**

S. Rep. No. 1333, 79th Cong. 2d Sess. (1946) .......... 27

## INTRODUCTION AND SUMMARY OF ARGUMENT

United Trademark Holding, Inc. ("UTH") and the Director of the U.S. Patent & Trademark Office ("Director") offer nothing that could remedy the fundamental errors of the Trademark Trial and Appeal Board ("Board") in this case. As Appellant Rebecca Curtin showed in her opening brief, the Board erred in imposing the analytical framework from *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2021), and in assessing whether Curtin is entitled to oppose the registration of UTH's proposed trademark.

UTH and the Director largely ignore significant points in Curtin's opening brief, primarily asserting that the *Lexmark* framework applies to opposition proceedings under 15 U.S.C. § 1063 because this Court has concluded that the *Lexmark* framework applies to cancellation proceedings under 15 U.S.C. § 1064. But UTH's and the Director's premise does not lead to their conclusion. *Lexmark* dealt specifically with the framework for causes of action—in other words, lawsuits in federal court—and specifically false-advertising lawsuits in federal court. And the only cases in which this Court has adopted the *Lexmark* framework (for cancellation proceedings) have rested on the explicit finding that they also concerned a "cause of action." In contrast, § 1063 does not provide a

cause of action. It allows a person to participate in an ongoing administrative process to determine whether a mark should be registered, not to initiate that process. UTH and the Director assume that § 1063 is a cause of action, but they never address Curtin's showing that it is not. Nor do they address the longstanding principle of basic administrative law that different standards apply to causes of action (in court) than to agency proceedings.

Because neither *Lexmark* nor this Court's cases have altered the standards for assessing whether a person may oppose the registration of a trademark, this Court's decision in *Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999), remains the governing precedent on the requirements for those who may participate in opposition proceedings under § 1063. The Board fundamentally erred in disregarding *Ritchie* and charting its own course.

Even if the *Lexmark* analytical framework does apply to § 1063 opposition proceedings, Curtin would still be entitled to participate in the opposition to UTH's proposed trademark. Curtin's challenge to UTH's registration falls within the zone of interests protected by opposition proceedings under the Lanham Act, and her injuries would be

proximately caused by a violation of the Act. UTH contends that a commercial interest is required in all cases under the Lanham Act, but, in a departure from the Board's reasoning below, the Director does not agree. As Curtin demonstrated in her opening brief, her challenge falls well within the zone of interests for the particular provision of the Lanham Act at issue here.

Additionally, Curtin's injuries would be proximately caused by a violation of the Lanham Act. The Director declines to address the proximate-cause standard, and UTH simply repeats the Board's erroneous reasoning. But the Board's reasoning is contradicted by the very authority on which it purports to rely. *Lexmark* itself explains that an "intervening step" of harm to another "is not fatal to the showing of proximate causation required by the statute." *Lexmark*, 572 U.S. at 133.

Because Curtin is entitled to oppose the registration of UTH's proposed trademark, the Court should reverse and remand.

## ARGUMENT

In her opening brief, Curtin demonstrated that she is entitled to oppose UTH's registration of the RAPUNZEL mark under this Court's established precedent and that the Board erred by imposing the *Lexmark* analytical framework in assessing who may participate in opposition

proceedings under § 1063. Opening Brief ("Op. Br.") 20–33. Curtin further demonstrated that even under the *Lexmark* framework, the Board erred in concluding that Curtin is not entitled to oppose UTH's registration. Op. Br. 33–46. UTH's and the Director's efforts at defending the Board's decision fail. They both simply ignore critical points in Curtin's opening brief, assume the outcome they desire, and contend issues have already been decided. They are wrong.

## I. The *Lexmark* Framework Does Not Govern Agency Opposition Proceedings.

As Curtin showed in her opening brief and as this Court explained in *Ritchie*, the showing necessary to participate in opposition proceedings under § 1063 is different from the showing needed to initiate a cause of action in federal court. Op. Br. 20–22. In *Ritchie*, this Court held that to oppose the registration of a trademark, an opposer must satisfy the plain language of § 1063 and make two additional showings: that the opposer has a real interest in the proceeding and a reasonable basis for the belief of damage. 170 F.3d at 1095. Curtin satisfies both requirements. Op. Br. 23–24. UTH did not seriously challenge Curtin on this basis before the Board, and the Director does not suggest Curtin fails this standard. *See infra* Section I.C. The arguments they do offer are unavailing.

### A. *Lexmark* Did Not Alter the Standard for Participating in Agency Proceedings, Let Alone Opposition Proceedings Under § 1063.

Both UTH and the Director claim that *Lexmark* changed the playing field for § 1063 opposition proceedings. UTH Br. 8–12; PTO Br. 12–17. But *Lexmark* said nothing about entitlement to participate in agency proceedings, let alone § 1063 opposition proceedings. It concerned only causes of action in federal court. Op. Br. 25–26. The question presented was whether "Static Control Components, Inc., *may sue* petitioner, Lexmark International, Inc." in a civil action "for false advertising." *Lexmark*, 572 U.S. at 120 (emphasis added). In clarifying the origin of the analytical framework for its decision, the *Lexmark* Court explained that its framework stemmed from cases addressing "the 'scope of the *private remedy* created by' Congress in § 4 of the Clayton Act, and the 'class of persons who [could] maintain a *private damages action*.'" *Id.* at 126 (quoting *Associated General Contractors*, 459 U.S. at 529) (emphases added). The purpose of the zone-of-interests test, the Court explained, was to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127. That is, the origin and purpose for the test concerned the "right to

sue." *Id.* Indeed, the zone-of-interests formulation itself, according to the Court, arose "as a limitation on the *cause of action for judicial review* conferred by the Administrative Procedure Act (APA)." *Id.* at 129. The *Lexmark* Court thus summarized "the question" presented in the case as "whether Static Control falls within the class of plaintiffs whom Congress has authorized *to sue* under § 1125(a)," that is, "whether Static Control has a cause of action under the statute." *Id.* at 128.

Neither UTH nor the Director directly addresses the fact that *Lexmark* concerned only the analytical framework for causes of action in federal court. Nor can either dispute the basic and longstanding principle of administrative law that the framework and standards for participating in agency proceedings are different from those necessary to sue in federal court. *See* Op. Br. 26–27. Instead, UTH and the Director assert that an opposition proceeding under § 1063 is a "cause of action." UTH Br. 9, 11; PTO Br. 12–14. Neither explains why they assume that an agency opposition proceeding under § 1063 is a "cause of action"; they just assert it. That is insufficient. As Curtin showed in her opening brief, an opposition under § 1063 is not a cause of action; it merely allows a person

to participate in an ongoing administrative process to determine whether a mark should be registered. Op. Br. 26, 31–33.

By filing a notice of opposition, an opposer does not invoke the power of the agency to begin the process of determining whether a mark should be registered. An opposer cannot participate in an opposition except as part of an ongoing process for determining whether a mark should be registered. That is, an opposer can do nothing until an applicant has first sought to register a mark with the Patent & Trademark Office, an examiner has examined the mark, and the examiner has made an initial determination that the mark should be registered. Only at that point may an opposer file a notice of opposition as part of the continuing administrative process of determining whether a mark should be registered. If a person attempts to oppose the registration of a trademark at another point in the process—or before that process has begun or after that process has concluded—no opposition proceeding occurs. In other words, an opposer cannot initiate the process of determining whether a mark should be registered; he or she may only participate as part of an ongoing process of determining whether a mark

should be registered. Thus, § 1063 does not provide a "cause of action," only an opportunity to participate in an ongoing administrative process.

An analogy helps to illustrate this principle. The ability to file comments on a proposed rule, or in an adjudication, does not constitute a "cause of action," but represents the ability to participate in an already-initiated and ongoing process. Likewise, § 1063 does not provide a "cause of action" to an opposer but merely an opportunity to participate in an already-initiated and ongoing process. *See* Op. Br. 32–33.

Section 1063 does not provide a "cause of action" not only because it continues an ongoing process, but also because it provides for the continuation of an ongoing *administrative* process. Under basic administrative law, participation in agency proceedings has long been governed by different standards and requirements than those necessary to initiate a lawsuit in federal court. One key, longstanding difference is that the zone-of-interests test—which is at the heart of the *Lexmark* analytical framework—is "inapplicable to an administrative agency." *Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 75 (D.C. Cir. 1999); Op. Br. 26.

UTH contends that *Envirocare* pre-dates *Lexmark* and concerned a different administrative agency. UTH Br. 11. Both points are irrelevant. *Lexmark* said nothing about the framework or standards for participating in administrative agency proceedings. It addressed only the right to sue in federal court. Thus, *Lexmark* did not affect the longstanding principle articulated in *Envirocare*. And that principle is not limited to any particular agency or to the pre-*Lexmark* era. It is a long-accepted (and still-accepted) principle of administrative law. *See FDRLST Media, LLC v. NLRB*, 35 F.4th 108, 119 (3d Cir. 2022) (recognizing that administrative agencies are not constrained by "'judicially-created standing doctrines' … including the zone-of-interests tests"); *see also Gettman v. DEA*, 290 F.3d 430, 434 (D.C. Cir. 2002) (explaining that "the 'criteria for establishing administrative standing … may permissibly be less demanding than the criteria for judicial standing'").

The Director attempts to distinguish *Envirocare* and these other cases on grounds that they are "from other circuits" and are therefore "irrelevant to the proper disposition of this administrative proceeding under this Court's precedents." PTO Br. 15 n.4. But as demonstrated

more fully below, the relevant precedent of this Court is *Ritchie*, and *Envirocare* and these other cases confirm that it is *Ritchie*'s analysis, not the Board's *Lexmark*-based analysis, that is consistent with longstanding and basic principles of administrative law.

This Court in *Ritchie* understood the fundamental distinction between courts and administrative agencies in holding that the standards for federal court do not apply to an opposition proceeding under § 1063. *Ritchie*, 170 F.3d at 1094 ("'[a]dministrative adjudications … are not an article III proceeding to which either the 'case or controversy' or *prudential standing* requirements apply.'" (quoting *Ecee, Inc. v. Federal Energy Regulatory Comm'n*, 645 F.2d 339, 349–50 (5th Cir. 1981) (emphasis added)); Op. Br. 21. Instead, *Ritchie* concluded that an opposer must show a real interest in the proceeding and a reasonable basis for the belief in damage. *Ritchie*, 170 F.3d at 1094. And because the Court's decision in *Ritchie* has not been "expressly overruled by statute or by a subsequent Supreme Court decision," *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005), the Board fundamentally erred in failing to follow it. Op. Br. 28, 29.

UTH—but not the Director—contends that *Ritchie* was "effectively overruled." UTH Br. 5, 13. This is unavailing. First, "effectively overruled" is not the same as "expressly overruled" by the Supreme Court, and so the Board erred in not following *Ritchie*. Second, *Ritchie* has not been overruled in any way, let alone "effectively." Neither UTH nor the Director can cite a single decision after *Ritchie* in which this Court or the Supreme Court has addressed the entitlement to oppose under § 1063. *Ritchie* remains the latest pronouncement by any court on the framework and standards to oppose registration under § 1063. *Lexmark* certainly did not address § 1063 or the showing necessary to oppose a trademark registration. That case concerned only causes of action in federal court. And, as discussed more fully below, none of this Court's decisions has addressed § 1063.

### B. This Court's Decisions Have Not Altered the Standard for Opposing Registrations Under § 1063.

UTH and the Director next contend that this Court's decision in *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298 (Fed. Cir. 2020), necessarily altered the requirements to participate in an opposition proceeding under § 1063. UTH Br. 8–9, 10–11; PTO Br. 13–14. But *Corcamore* was a § 1064 case, not a § 1063 case. In her opening brief, Curtin showed that

*Corcamore* rested on this Court's explicit determination that a cancellation proceeding under § 1064 is a "cause of action" and that, unlike § 1064, § 1063 does *not* provide a cause of action. Op. Br. 30–32.[1] As explained above, after an initial examination, and before a mark is registered, § 1063 permits a person to participate in the administrative process by opposing the registration of a trademark—that is, to participate in an ongoing administrative process to determine whether a mark should be registered. Op. Br. 32. Section 1064, on the other hand, operates differently. As the Director explains, "[f]ollowing registration," § 1064 permits a person "*to initiate* a proceeding to cancel the registration of that mark." PTO Br. 5. In other words, *Corcamore* reasoned that § 1064 provides a person with the functional equivalent of suing a trademark

[1] Curtin maintains that the Court in *Corcamore* erred in concluding that § 1064 provides a cause of action because a cause of action has consistently referred to an action in court, not an agency proceeding. Op. Br. 30–31. Indeed, it appears that the *Corcamore* panel was presented with no briefing on the longstanding administrative-law principle that "[j]udicially-devised prudential standing requirements, of which the 'zone of interests' test is one, are … inapplicable to an administrative agency." *Envirocare*, 194 F.3d at 75. However, as explained in Curtin's opening brief, that conclusion was ultimately immaterial. It did not make a difference to the result in *Corcamore*. Op. Br. 31. And, as explained in Curtin's opening brief, there are significant reasons to conclude that, even if § 1064 does provide a cause of action, an opposition under § 1063 does not. Op. Br. 31–32.

holder in the Patent & Trademark Office to cancel a mark. In contrast, § 1063 does not permit a person to "sue" or even to initiate the process of determining whether a mark should be registered and, therefore, cannot be considered a "cause of action." Rather, it is akin to submitting comments during a rulemaking proceeding or adjudication. Op. Br. 32–33. UTH and the Director provide no analysis demonstrating that an opposition proceeding is a "cause of action." Indeed, they cannot do so under longstanding principles of administrative law.

Instead, both UTH and the Director rely on the Court's statement in *Young v. AGB Corp.*, 152 F.3d 1377 (Fed. Cir. 1998), that the similarities between § 1063 and § 1064 require the Court to "'construe the requirements of these provisions consistently.'" PTO Br. 13–14 (quoting *Young*, 152 F.3d at 1380); UTH Br. 10. But *Young* pre-dates *Lexmark*, and even *Ritchie*, and did not decide that the framework for entitlement to oppose under § 1063 must be the same as the framework under § 1064 in all respects. The issue in *Young* was whether the opposer there had to plead a statutory ground for opposing registration. *Young*, 152 F.3d at 1377, 1379. There was no dispute that the opposer had standing (what is now framed as entitlement to oppose). *Id.* at 1380 ("The

parties do not dispute that Young's Notice of Opposition sets forth facts which if proved would constitute standing to oppose AGB's registration."). Instead, the sole question in *Young* was whether the opposer had to plead the same statutory grounds in a § 1063 opposition proceeding as in a § 1064 cancellation proceeding as the basis for challenging an application for registration. *Id.* And the Court concluded that he did. *Id.* In reaching that conclusion, the Court stated that § 1063 and § 1064 should be construed consistently—that is, a participant in both proceedings must have "standing" and that the grounds for opposing registration of a mark should be consistent with those grounds for cancelling a mark. However, nothing in the Court's discussion indicated that differences would not arise in assessing that "standing" under § 1063 and § 1064. Any "broad language" suggesting otherwise "was unnecessary to the Court's decision, and cannot be considered binding authority." *Kastigar v. United States*, 406 U.S. 441, 454–55 (1972); *Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority.").

UTH and the Director also point to a couple of decisions in which this Court allegedly "held that the same test applies to determine who may invoke cancellation and opposition proceedings." PTO Br. 14; UTH Br. 9. But both of those cases involved a § 1064 cancellation proceeding, not a § 1063 opposition proceeding. Although the Court stated in both decisions that the standards for both proceedings were the same, UTH and the Director leave out what that meant. According to the Court in those decisions, the two provisions "both require a party to demonstrate a real interest in the proceeding and a reasonable belief of damage." *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373–74 (Fed. Cir. 2020); *Empresa Cubana Del Tabaco v. General Cigar Co.*, 753 F.3d 1270, 1275 (Fed. Cir. 2014) ("A petitioner is authorized by statute to seek cancellation of a mark where it has 'both a "real interest" in the proceedings as well as a "reasonable" basis for its belief of damage.'"). That is, the Court said that the same standard applies to § 1063 and § 1064 but specified that § 1064 requires the § 1063 standard from *Ritchie*.

To be sure, after those two decisions, this Court subsequently reasoned in *Corcamore* that the *Lexmark* analytical framework applies

to § 1064, but that change in direction rested on the express finding that § 1064 is a "cause of action." As explained, § 1063 allows a person to participate in an ongoing administrative process to determine whether a mark should be registered, but it does not provide a cause of action. *See supra*, pp. 6–8. Accordingly, *Ritchie* remains the governing precedent of this Court on the applicable framework and standards for participating in an opposition proceeding. The Board erred in disregarding *Ritchie*.

UTH, but not the Director, contends that *Ritchie* is moot or inapplicable because the Supreme Court found the underlying substantive basis for challenging the mark in that case unconstitutional. UTH Br. 13–15. UTH's argument echoes the Board's assertion that it could disregard *Ritchie* because the Supreme Court found unconstitutional "the bar on registration of 'immoral' and 'scandalous' matter." Appx3. But, as Curtin showed in her opening brief, that legal development had no impact on this Court's holding in *Ritchie* regarding the framework for assessing whether a person may oppose registration under § 1063. Op. Br. 28. *Ritchie*'s framework—requiring a real interest and reasonable basis for a belief in injury—did not rest on the substantive basis for challenging a mark.

### C. Curtin Satisfies *Ritchie*'s Standard for Opposing Registration under § 1063.

Curtin showed in her opening brief that she satisfies *Ritchie*'s test for those who may oppose registration of a trademark under § 1063. The Director has no response, and UTH did not seriously dispute the issue below. On appeal, UTH asserts that Curtin does not meet these requirements, UTH Br. 16–17, but its assertions are refuted by Curtin's unrebutted evidence and by the law.

As for the first prong (Curtin's real interest), UTH states only that "UTH maintains that Curtin's status as a consumer is not sufficient." UTH Br. 16. However, UTH ignores the unrebutted evidence in the record showing that registering UTH's trademark on RAPUNZEL would deprive Curtin, as a longtime collector of fairy-tale dolls, of healthy marketplace competition and cause a corresponding increased cost of goods. Op. Br. 23. UTH also ignores the unrebutted evidence that registering the trademark would chill the creation of new dolls and toys based on Rapunzel. *Id.* UTH's mere ipse dixit cannot overcome this evidence.

On the second prong (reasonable basis for the belief of damage), UTH argues that the numerous signatures of others who share Curtin's

views are based "on speculation and unsupported by evidence." UTH Br. 17. But that argument ignores *Ritchie*'s holding that a reasonable basis may be shown by alleging "that others also share the same belief" and be supported with "evidence in the form of surveys or petitions." 170 F.3d at 1095. That is precisely what Curtin submitted. Thus, UTH's argument as to Curtin's reasonable belief of damage is refuted by *Ritchie*.

* * * * *

Ultimately, UTH and the Director cannot remedy the Board's erroneous imposition of the *Lexmark* framework on § 1063 opposition proceedings. This Court's decision in *Ritchie* establishes the binding framework for assessing who may participate in an opposition proceeding; that framework is consistent with longstanding principles of administrative law that differentiate court actions from agency proceedings, and Curtin satisfies that framework because she has both a real interest and a reasonable basis for the belief in injury.

## II. Curtin Is Entitled To Oppose UTH's Registration Even Under The *Lexmark* Framework.

Even if the Court concludes that the *Lexmark* analytical framework governs opposition proceedings under § 1063, Curtin is entitled to oppose UTH's registration of the proposed RAPUNZEL mark. Under *Lexmark*,

a plaintiff's claim must fall within the zone of interests protected by the law invoked and the plaintiff's injuries must be proximately caused by violations of the statute. 572 U.S. at 129–30, 132. As Curtin demonstrated, her challenge falls within the zone of interests protected by the Lanham Act and her injuries would be proximately caused by violations of that Act. Op. Br. 34–46. UTH's and the Director's arguments to the contrary are unavailing.

### A. Curtin's Interests Fall within the Lanham Act's Zone of Interests.

As Curtin demonstrated in her opening brief, her challenge to UTH's proposed mark falls within the zone of interests protected by the Lanham Act, and the Board erred in concluding that the Lanham Act only "protects plaintiffs with commercial interests." Appx7; Op. Br. 34–37. In *Lexmark*, the Supreme Court examined the interests protected by the Lanham Act by examining § 1127, and the Court concluded that the only interest listed in § 1127 relevant to the false-advertising case at issue was the Act's purpose of protecting against unfair competition. 572 U.S. at 131. However, the Court explained that "the breadth of the zone of interests varies according to the provisions of law at issue," *id.* at 130, and accordingly, the Board erred in concluding that the commercial

interest required by the false-advertising claim in *Lexmark* is also required for all other claims and proceedings under the Lanham Act, including for a § 1063 opposition proceeding. Op. Br. 34–36. Other purposes of the Lanham Act confirm that a consumer's interest in preventing the registration of a generic or descriptive term falls within the zone of interests protected by the Lanham Act—and in particular within the zone of interests protected by Section 13 of the Lanham Act. Op. Br. 36–38.

Recognizing that the Lanham Act protects interests other than the specific one at issue in *Lexmark*, the Director now walks back the Board's reasoning—and expressly disagrees with UTH—by noting "the potential for different provisions of the Lanham Act to protect different interests" and by asserting that this Court "should not adopt UTH's broader position that a commercial interest is always required to satisfy the zone-of-interests test." PTO Br. 23. UTH, on the other hand, repeats the Board's sweeping assertion that the Lanham Act uniformly requires a commercial interest and cites cases for the supposed proposition that this Court has "repeatedly held that a commercial interest is required to

satisfy the zone-of-interest requirement." UTH Br. 18. UTH's assertion does not withstand scrutiny.

None of the cases UTH cites "requires" a commercial interest in all circumstances. As Curtin explained in her opening brief, for instance, *Corcamore* states only that "a petitioner *can* satisfy the real-interest test by demonstrating a commercial interest." 978 F.3d at 1305–06 (emphasis added); Op. Br. 39. That is, a commercial interest may be a sufficient basis, but that does not make it a necessary one. Similarly, this Court in *Empresa Cubana* merely indicated that a legitimate commercial interest would "satisfy the requirements for bringing a cancellation proceeding," 753 F.3d at 1275, not that it was required.

UTH also cites *Meenaxi Enterprise, Inc. v. Coca-Cola Co.*, 38 F.4th 1067 (Fed. Cir. 2022), UTH Br. 18–19, but that case does nothing for UTH. *Meenaxi* concerned Coca-Cola's claim under § 1064(3) that Meenaxi's registrations would misrepresent the source of goods and harm Coca-Cola in the United States. To frame its discussion, the Court in *Meenaxi* looked to its earlier decision in *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (Fed. Cir. 2016), which dealt specifically with a false association claim under § 1064(3), and which concluded that this

type of claim "pertains to the same conduct targeted by § 43(a) false association actions—using marks so as to misrepresent the source of goods." *Belmora*, 819 F.3d at 714–15, *discussed in Meenaxi*, 38 F.4th at 1075. Accordingly, the Court adopted the same zone-of-interests requirement for § 1064(3) as the Supreme Court had for § 43(a) in *Lexmark*. Contrary to UTH's suggestion, *Meenaxi* does not suggest that a commercial interest is always required to satisfy the Lanham Act's zone of interests. *Lexmark* makes clear that the zone of interests vary with the statutory provisions at issue, and Curtin demonstrated in her opening brief that a consumer interest in preventing generic or descriptive trademarks falls within the Act's zone of interests. Op. Br. 35–38.[2]

[2] The Director cites some other cases to support the notion that the interests protected by the provisions at issue are commercial interests. PTO Br. 20–21. But cases such as *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024 (CCPA 1982), and *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098 (CCPA 1976), merely indicated that a commercial interest was sufficient, not that it was necessary. The court in *Golden Gate Salami Co. v. Gulf States Paper Corp.*, 332 F.2d 184 (CCPA 1964), indicated that the real interest for standing extended to "a personal commercial interest," *id.* at 188, but the court did not explain the origin for this gloss on an earlier decision. In any event, Curtin does have "a personal commercial interest" because the evidence shows that, at the very least, she would face increased costs in purchasing Rapunzel dolls. Appx266–67, Appx2646–47.

For its part, the Director contends that guarding against generic or descriptive trademarks triggers monopolistic or market distortion concerns and therefore implicates the Lanham Act's purpose of preventing unfair competition—the same purpose implicated by the false advertising claim in *Lexmark*. PTO Br. 19–20. That is true, but it does not mean that guarding against generic or descriptive trademarks triggers *only* those concerns or implicates *only* that purpose. Nor does the Director explain why such concerns are connected *solely* to the unfair competition purpose. The Board and the Director cite *In re Abcor Dev. Corp.*, 588 F.2d 811, 813 (CCPA 1978), which explains that one of the "major reasons" for disqualifying generic or merely descriptive marks is to preserve competition. There is no dispute that preserving competition is one of the "major reasons" for disqualifying generic or merely descriptive marks. But that is not the only reason. Just because there are competitor interests for disqualifying generic or descriptive marks does not mean that there are not *also* consumer interests for disqualifying generic or descriptive marks.

The Director argues that "Curtin does not cite a single case indicating that the purpose of allowing opposition to the registration of a

generic or merely descriptive mark is to protect consumer interests." PTO Br. 20. But as Curtin demonstrated in her opening brief, many of the Lanham Act's purposes concern not only guarding against the effect generic or descriptive marks have on the proper functioning of the marketplace, but also protecting consumers. Op. Br. 36–38. Indeed, guarding against generic and non-descriptive marks has been intimately connected to protecting the consuming public since before the Lanham Act, which carried forward the bar on generic and non-descriptive marks. "No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, *the public* would be injured rather than protected …." *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. 311, 323 (1871) (emphasis added); *see also Amoskeag Mfg. Co v. D. Trainer & Sons*, 101 U.S. 51, 53 (1879) (same).

The Director contends that it is inappropriate to consider the variety of purposes of the Lanham Act. PTO Br. 21. For instance, the Director argues that the Court cannot consider the Lanham Act's express purpose in § 1127 of "'making actionable the deceptive and misleading use of marks in … commerce'" because Curtin's opposition did not

challenge the RAPUNZEL mark under § 1052(a) on the ground that it is deceptive or misleading. *Id.* But there is no basis for the Director's cramped view. The purpose stated in § 1127 is to make deceptive and misleading uses of a mark "actionable," and a mark cannot be "actionable" if it is generic or merely descriptive. As Curtin demonstrated in her opening brief, the purpose of "making actionable the deceptive and misleading use of marks" is intimately connected to protecting consumers. Op. Br. 36. In any event, these other provisions merely confirm that the ban against generic or descriptive marks is meant to protect the consuming public. *See Delaware & Hudson Canal Co.*, 80 U.S. at 323.

UTH and the Director also contend that the Court should ignore other provisions of the Lanham Act apart from § 1127, including the bar on immoral and scandalous marks or marks containing the flag or insignia of a country, state, or municipality. UTH Br. 21; PTO Br. 22–23. The Director argues that those provisions should be ignored in assessing the "zone of interests" because they are not the grounds on which Curtin is opposing the mark at issue here. PTO Br. 22–23. But the Director offers no reason to limit the analysis for ascertaining the "zone of interests" for

§ 1063 in that fashion. And even if the analysis is so limited, the grounds on which Curtin is opposing the mark at issue here clearly implicate both commercial and consumer interests, for the reasons already explained above. For its part, UTH argues that to consider these other provisions for disqualifying registration of a mark is to "conflate" grounds for registrability with the zone-of-interests analysis. UTH Br. 21. In other words, UTH asserts—contrary to the Director—that the provisions setting forth the reasons that a mark may be disqualified for registration do not constitute the relevant "interests" in the zone-of-interests test. But the reasons that a mark may be disqualified for registration are highly relevant. Those provisions demonstrate that the Lanham Act is not concerned solely with commercial interests, as the Director acknowledges. PTO Br. 23. In summary, these provisions may be inconvenient to UTH and the Director, but the zone-of-interests inquiry focuses on identifying "the interests protected by the Lanham Act" and particularly the interests protected by § 1063, not the interests of the UTH and the Director.

Moreover, the Director and UTH ignore other announced purposes of the Lanham Act found elsewhere, including Congress's desire, as

stated in the accompanying Senate Report, "to protect the public." S. Rep. No. 1333, 79th Cong. 2d Sess. (1946). They also have no response to the Supreme Court's teaching that a core purpose of registering trademarks is "to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985).

For all of the foregoing reasons, protecting consumers clearly falls within the zone of interests protected by the Lanham Act. And Curtin's particular interest is consistent with and within the zone of interests protected by the Lanham Act and by opposition proceedings in particular. Op. Br. 39–40. As the *Lexmark* Court explained, the purpose of the zone-of-interests test, at least in the context of the Administrative Procedure Act, is to "foreclose[] suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." 572 U.S. at 130 (cleaned up). The Court further explained that the zone-of-interests test is "not especially demanding" and "the benefit of any doubt goes to the plaintiff." *Id.* (cleaned up); *see also Corcamore*, 978 F.3d at 1303 (applying these explanations to the

zone-of-interests test generally and not only to the APA context). Protecting the interests of a consumer like Curtin is *not* "marginally related to" or "inconsistent with" the purposes implicit in the Lanham Act or the purposes implicit in allowing opposition proceedings. Therefore, "the benefit of any doubt" goes to Curtin.

It is plain that Curtin prevails under the *Lexmark* framework for another reason as well. This Court observed in *Corcamore* that it saw "no meaningful, substantive difference" between the "real interest" test used in *Ritchie* and the zone-of-interests test from *Lexmark*. 978 F.3d at 1305. Thus, for all of the reasons that Curtin prevails under the *Ritchie* test, she also prevails under the *Lexmark* test.

### B. Curtin's Injuries Would Be Proximately Caused by the Alleged Violation of the Act.

Not only does Curtin's challenge to UTH's registration fall within the Lanham Act's zone of interests, but her injuries would be proximately caused by a violation of the Act. Op. Br. 41–46. The Board erred in concluding that some intervening injury on another entity automatically eliminates proximate cause. Op. Br. 42–43. The Director declines to address the proximate cause requirement. PTO Br. 17. And UTH's arguments cannot salvage the Board's decision.

UTH recites the *Lexmark* Court's proximate causation discussion that harms cannot be too remote, UTH Br. 23, and argues that intervening harms cannot satisfy proximate cause, UTH Br. 24 (Curtin's status make her "the type of third party whose alleged harms do not fall within the ambit of the statute"). However, UTH has no response to Curtin's demonstration that some level of intervening injury to another does not eliminate proximate cause. Op. Br. 42–43. The *Lexmark* Court expressly stated that an "intervening step" of harm to another "is not fatal to the showing of proximate causation required by the statute." 572 U.S. at 133. That statement in *Lexmark* by itself is sufficient to show that the Board erred.

All *Lexmark* requires is a "sufficiently close connection to the conduct the statute prohibits," *id.*, and Curtin demonstrated that her harms would be closely connected to the conduct the statute prohibits. Op. Br. 43–44. On this point, UTH emphasizes the Board's assertion that Curtin's harms are speculative. UTH Br. 23. However, as Curtin demonstrated in her opening brief, the Board's assertion stemmed from its erroneous proximate-cause standard, and, even on its own terms, the assertion is wrong. Op. Br. 45 & n.3. The Supreme Court explained in

*Wal-Mart* that a trademark can distort competition "not merely by successful suit but by the plausible threat of successful suit." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214 (2000). And the case law cited by Curtin, Op. Br. 44, recognizes the harms she has alleged, demonstrating that those harms are not speculative but recognized by the courts. UTH has no response to any of these points.

## CONCLUSION

For the foregoing reasons and those in Curtin's opening brief, this Court should reverse and remand for further proceedings.

Date: March 12, 2024

Respectfully submitted,

/s/ Matthew A. Barlow
JOHN C. STRINGHAM
MATTHEW A. BARLOW
DAVID R. TODD
RYAN C. MORRIS
WORKMAN NYDEGGER
60 E. South Temple St., Ste. 1000
Salt Lake City, UT 84111
(801) 533-9800

*Counsel for Appellant Rebecca Curtin*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system this 12th day of March, 2024, and that a copy was served on all counsel of record by the CM/ECF system.

Dated: March 12, 2024

/s/ Matthew A. Barlow

MATTHEW A. BARLOW
WORKMAN NYDEGGER
60 E. South Temple St, Ste. 1000
Salt Lake City, UT 84111
(801) 533-9800

*Counsel for Appellant Rebecca Curtin*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that, according to the word-processing system used to prepare it, the foregoing REPLY BRIEF OF APPELLANT REBECCA CURTIN is 6175 words in length, excluding those portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), and therefore complies with the type-volume limitation set forth in Federal Circuit Rule 32(b)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

Dated: March 12, 2024

/s/ Matthew A. Barlow
MATTHEW A. BARLOW
WORKMAN NYDEGGER
60 E. South Temple St, Ste. 1000
Salt Lake City, UT 84111
(801) 533-9800

*Counsel for Appellant Rebecca Curtin*