**UNITED STATES PATENT AND TRADEMARK OFFICE**

OFFICE OF THE GENERAL COUNSEL

OFFICE OF THE SOLICITOR

February 19, 2025

VIA CM/ECF
Mr. Jarrett B. Perlow
Circuit Executive & Clerk of the Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Re: *Rebecca Curtin v. United Trademark Holdings, Inc.*, No. 23-2140 (Fed. Cir.)

Dear Mr. Perlow:

Pursuant to FRAP 28(j), the Director writes to notify the panel and the parties of additional authority relevant to the USPTO's position in this appeal that Curtin is not authorized by 15 U.S.C. § 1063 to oppose United Trademark Holdings' registration: *Luca McDermott Catena Gift Tr. v. Fructuoso-Hobbs SL*, 102 F.4th 1314 (Fed. Cir. 2024). *Luca* was decided after briefing in this appeal was completed.

In *Luca*, this Court considered entitlement to bring a cancellation proceeding under § 1064. The Court held that appellant—a limited partner in Hobbs Winery—could not petition to cancel the marks of two other wineries for likelihood of confusion with Hobbs Winery's mark because appellant had not shown the requisite commercial interest to establish a statutory right to seek cancellation of the marks. *See Luca*, 102 F.4th at 1325. Applying the framework of *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court held that "[u]nder those circumstances, in which Appellant's only basis to challenge Appellees' marks is its minority ownership interest in the owner of the . . . mark [i.e., in Hobbs Winery], *and not its own commercial activity allegedly affected by Appellees' marks*, we conclude that it is not within the zone of interests entitled to seek cancellation of those marks under § 1064." *Luca*, 102 F.4th at 1326 (emphasis added). The Court explained that its "conclusion is supported by the Supreme Court's guidance that Congress's intent in enacting the Lanham Act was to provide a cause of action to persons engaged in commerce, not consumers," and that Appellant "lacks the direct commercial interest in the registration at issue that the trademark laws contemplate as providing a basis for a cause of action." *Id.*

**UNITED STATES PATENT AND TRADEMARK OFFICE**

OFFICE OF THE GENERAL COUNSEL

OFFICE OF THE SOLICITOR

The Court's decision in *Luca* further supports the USPTO's position that Curtin is not entitled to bring an opposition proceeding asserting only a consumer interest in United Trademark Holdings' registration of its mark.

Respectfully submitted,

/s/ *Sarah E. Craven*
Sarah E. Craven
Associate Solicitor
*Attorney for the Director of the United States Patent and Trademark Office*

102 F.4th 1314
United States Court of Appeals, Federal Circuit.

LUCA MCDERMOTT CATENA GIFT TRUST, Appellant
v.
FRUCTUOSO-HOBBS SL, Appellee
Luca McDermott Catena Gift Trust, Appellant
v.
Hillick & Hobbs Estate, LLC, Appellee

2023-1383, 2023-1385
|
Decided: May 23, 2024

**Synopsis**
**Background:** A first limited partner of limited partnership, a winery, and two other limited partners, all three of which were trusts that collectively owned 21.6% of the partnership, filed consolidated petition seeking cancellation of the trademarks of two other wineries with which partnership's winemaker was affiliated, asserting fraud and likelihood of confusion between partnership's mark "PAUL HOBBS," which was winemaker's name, and the marks of each of the other two wineries, which were "ALVAREDOS-HOBBS" and "HILLICK AND HOBBS," respectively. The United States Patent and Trademark Office, Trademark Trial and Appeal Board, granted the other wineries' motions to dismiss. Appeal was taken.

**Holdings:** The Court of Appeals, Lourie, Circuit Judge, held that:

first partner was the sole appellant;

first partner had Article III standing to challenge Trademark Trial and Appeal Board's (TTAB) dismissal of the cancellation petition;

first partner did not meet zone-of-interests requirement for statutory standing to seek cancellation of other wineries' marks; and

first partner also did not meet proximate-cause statutory-standing requirement.

Affirmed.

***1319** Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 92079918, 92079919.

**Attorneys and Law Firms**

Kit Knudsen, Commins, Knudsen & Chou, P.C., Oakland, CA, argued for appellant. Also represented by David Harald Commins.

Justin D. Hein, Carle, Mackie, Power & Ross LLP, Santa Rosa, CA, argued for appellees. Also represented by John Bernard Dawson, Kristin Ann Mattiske-Nicholls.

Before Lourie, Reyna, and Chen, Circuit Judges.

**Opinion**

Lourie, Circuit Judge.

Luca McDermott Catena Gift Trust ("Appellant") appeals from a consolidated decision of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("the Board") dismissing its petitions to cancel the registered marks ALVAREDOS-HOBBS and HILLICK AND HOBBS. ***1320** *Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*, Nos. 92079918, 92079919 (T.T.A.B. Nov. 17, 2022), J.A. 1–11 ("*Decision*"). Because the Board correctly concluded that Appellant lacks a statutory right to seek cancellation of those marks under 15 U.S.C. § 1064, we affirm.

Background

Appellant and two related family trusts—the Dante McDermott Catena Gift Trust and the Nicola McDermott Catena Gift Trust—are each limited partners of California-based Paul Hobbs Winery, L.P. ("Hobbs Winery"). *Decision*, J.A. 6. Collectively, the three family trusts own 21.6% of the partnership. *Id.* Hobbs Winery, in turn, owns the registered trademark PAUL HOBBS in International Class 33 for "Wines." *Id.*; *see* Registration No. 3,498,652. Paul Hobbs is the name of the winemaker and another partial owner of Hobbs Winery. *See* J.A. 13.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Paul Hobbs is also affiliated with Appellees Fructuoso-Hobbs SL ("Fructuoso-Hobbs") and Hillick & Hobbs Estate, LLC ("Hillick & Hobbs"). *See* J.A. 23. Fructuoso-Hobbs is a Spanish winery and owner of the registered mark ALVAREDOS-HOBBS, *see* Registration No. 6,229,243, while Hillick & Hobbs is a New York winery and owner of the registered mark HILLICK AND HOBBS, *see* Registration No. 6,390,072. Like Hobbs Winery's mark, each of Appellees' marks is registered in International Class 33 for "Alcoholic beverages except beers; wines." *Decision*, J.A. 4.

Appellant, along with the two related family trusts, filed a consolidated petition to cancel each of Appellees' marks under 15 U.S.C. § 1064 on the grounds of likelihood of confusion and fraud. *See generally* J.A. 12–39. The petition alleged that Appellees' use of ALVAREDOS-HOBBS and HILLICK AND HOBBS in connection with wine was likely to cause confusion in the marketplace with Hobbs Winery's use of PAUL HOBBS for the same goods. *Decision*, J.A. 4; *see* J.A. 15–17. The petition also alleged that each Appellee committed fraud by causing its attorney, the same attorney of record for Hobbs Winery's PAUL HOBBS mark, to aver in a declaration that Appellees' marks would not be likely to cause confusion with another mark. J.A. 18–19. In the family trusts' view, that attorney "knew, or should have known," that the Appellees' marks were likely to confuse the public into believing that Hobbs Winery made or authorized Appellees' use and registration of the HOBBS portion of their trademarks. *Id.* at 19.

Appellees each moved to dismiss the petition, arguing that the family trusts were not entitled by statute to cancel the challenged marks because they were not the owners of the allegedly infringed PAUL HOBBS mark. *See id.* at 54–55, 70–71. They also argued that the petition had failed to adequately allege both that the challenged marks were confusingly similar to the PAUL HOBBS mark and that Appellees had committed fraud. *Id.* at 62–65, 78–81.

In a consolidated decision, the Board granted the motions to dismiss. It concluded that, because the family trusts were mere minority owners of Hobbs Winery who did not use or otherwise possess rights in the PAUL HOBBS mark that could be asserted without approval from Hobbs Winery, they lacked a statutory entitlement to bring the cancellation action. *Decision*, J.A. 6 (citing *Miller v. B & H Foods, Inc.*, 209 U.S.P.Q. 357, 360 (T.T.A.B. 1981)). The Board further concluded that the family trusts had failed to adequately plead likelihood of confusion and fraud. *Id.* at 7–10. As for likelihood of confusion, the Board held that the family trusts could not show that they had a "proprietary interest" in the PAUL ***1321** HOBBS mark, which the Board deemed a necessary element to such a claim. *Id.* at 7–8 (citing *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1320 (CCPA 1981) (explaining that, in an opposition proceeding, a petitioner must show it has "proprietary rights in the term [it] relies upon to demonstrate likelihood of confusion as to source, whether by ownership of a registration, prior use of a technical 'trademark,' prior use in advertising, prior use as a trade name, or whatever other type of use may have developed a trade identity")).[1] The Board also concluded that the family trusts had failed to allege fraud because "[n]otwithstanding that the marks at issue are used on identical goods, i.e., wines, the marks are not substantially identical." *Id.* at 10. The Board denied the family trusts leave to file amended cancellation petitions, concluding that any amendment would be futile because there was "no path to a legally sufficient allegation of entitlement to a cause of action" given the family trusts' mere minority ownership of Hobbs Winery. *Id.* at 11.

Appellant, but not the Dante McDermott Catena Gift Trust or Nicola McDermott Catena Gift Trust, appeals.

## Discussion

### I

We begin our discussion with a point of clarity regarding the parties to this appeal, as it will impact the framing, though not the outcome, of our analysis. As alluded to above, this court has treated this case, since its inception, as having a singular appellant: Luca McDermott Catena Gift Trust. However, the Opening and Reply Briefs consistently imply that all three family trusts that petitioned for cancellation have appealed from the Board's decision. *See* Appellant's Br. at 5 ("Petitioner<u>s</u> appealed ...." (emphasis added)); Reply Br. at 5 ("Petitioner<u>s</u>' Article III standing firmly rests on <u>their</u> allegations that ...." (emphases added)). But, as Appellees recognized in their responsive briefing, "[i]t appears only one of the Petitioners, the Luca McDermott Catena Gift Trust, is appealing the Board's ruling." Appellees' Br. at 2 n.2. For the following reasons, we agree with Appellees that there is only one appellant in this case.

Upon the Board's consolidated decision, two Notices of Appeal were filed, one in each of Cancellation No. 92079918

(against Fructuoso-Hobbs) and Cancellation No. 92079919 (against Hillick & Hobbs). The body of each of those filings stated: "Notice is hereby given that Luca McDermott Catena Gift Trust, Opposer in the above-named cancellation proceeding, hereby appeals[.]" *See* Certified List, No. 23-1383, ECF No. 10, at 21–22, 25–26. The caption of each notice, however, included the names of all three family trusts (identified collectively as the "McDermott Catena Family Trusts"), and the signature blocks identified the signing attorney as "attorney for Appellants." *Id.* (emphasis added).

Pursuant to Federal Rule of Appellate Procedure 3(b)(1), when two or more parties are entitled to appeal from a decision, a joint notice of appeal is permitted, allowing the parties to proceed as a single appellant. The joint notice of appeal must "specify the ... parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1)(A). Upon receipt of a notice of appeal, the clerk of court is obligated, under Federal Rule of Appellate Procedure 12(a), to docket the appeal and "identify the appellant." ***1322** Fed. R. App. P. 12(a). Our court implements that requirement, in part, via Federal Circuit Rule 12(b), which provides that the clerk of court "must provide the parties with the official caption for the case at the time of docketing." Once that caption is provided, "[a]ny objection to the official caption must be made promptly." Fed. Cir. R. 12(b).

Upon receipt of each of the Notices of Appeal, the clerk of this court docketed two appeals and provided a caption for each that listed Luca McDermott Catena Gift Trust as the singular appellant. *See* Notice of Docketing, No. 23-1383, ECF No. 1 at 4; Notice of Docketing, No. 23-1385, ECF No. 1 at 4. Luca McDermott Catena Gift Trust was again listed as the singular appellant in the modified caption that was assigned when those two appeals were consolidated. *See* Order, No. 23-1383, ECF No. 8. No objection to those captions, prompt or otherwise, was made by either party.

Although the provisions of Federal Rules of Appellate Procedure are to be liberally construed, *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), such that the Notices of Appeal filed in this case *could* be read as joint notices from all three family trusts, Appellant was on notice at least as early as the filing of Appellees' Response Brief that it appeared as if only the Luca McDermott Catena Gift Trust had appealed. Accordingly, despite any ambiguity in the Notices of Appeal, the window to modify the official caption or clarify the scope of the appeal has closed. We therefore proceed to the legal issues presented in this case as they pertain to the singular appellant—Luca McDermott Catena Gift Trust—which, as we have mentioned, affects only the framing, and not the outcome, of our analysis.

II

Before we can determine whether or not Appellant has a statutory right of action to cancel the registrations of Appellees' marks, "[w]e have an obligation to assure ourselves of [Appellant's] standing under Article III" of the Constitution. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (internal quotation marks and citation omitted). "[A]lthough Article III standing is not necessarily a requirement to appear before an administrative agency, once a party seeks review in a federal court, 'the constitutional requirement that it have standing kicks in.' " *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)); *see generally Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168 (Fed. Cir. 2017). As the party seeking judicial review of the Board's decision, Appellant has the burden to establish that it has constitutional standing. *Phigenix*, 845 F.3d at 1171.

To establish constitutional standing, Appellant "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by [Appellees]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Appellant has alleged that, as an owner of Hobbs Winery, it has suffered (or will suffer) monetary harm as a result of the registration of Appellees' marks. *See* Appellant's Reply Br. at 6. In its view, Appellees' use of their marks diminishes the value of Hobbs Winery's ***1323** PAUL HOBBS mark, which in turn diminishes the value of Appellant's ownership interest in Hobbs Winery. Appellees disagree, arguing that Appellant's alleged ownership interest in Hobbs Winery is insufficiently "direct" to satisfy the injury-in-fact element for constitutional standing.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

A. Injury-in-Fact

We have little trouble concluding that Appellant's alleged injury—the diminishment in value of its investment in Hobbs Winery—satisfies the injury-in-fact requirement for constitutional standing. Such a monetary injury is undoubtedly "concrete." Indeed, the Supreme Court has long recognized that "traditional tangible harms," such as monetary harms, "readily qualify as concrete injuries under Article III." *TransUnion LLC*, 594 U.S. at 425, 141 S.Ct. 2190; *see* *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).

To be sure, we observe that the amount of Appellant's individual ownership interest in Hobbs Winery is unknown. Appellant's allegations of ownership of Hobbs Winery refer only to the *collective* 21.6% ownership of the original three petitioners. *See* Appellant's Reply Br. at 5 ("Petitioners' Article III standing firmly rests on their allegations that ... they have a substantial stake (21.6%) in [Hobbs Winery.]"). But we see no allegations of what portion, if any, of that ownership is attributable to Appellant. That is notable because, as the only party to appeal from the Board's decision, Appellant must establish that it has individually suffered an injury-in-fact, which on its theory of Article III standing, would require it to have a non-zero ownership interest in Hobbs Winery. Although unknown, we are nevertheless satisfied from the pleadings that Appellant has made that showing. *See* Appellant's Br. at 3 ("The Catena family has been a substantial owner of [Hobbs Winery] for decades, and more recently transferred that singular interest to their children, who hold it through the three McDermott-Catena Family Trusts."). Accordingly, Appellant has alleged a concrete monetary harm. *See* *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464, 137 S.Ct. 973, 197 L.Ed.2d 398 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.' " (citing *McGowan v. Maryland*, 366 U.S. 420, 430–31, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961))).

Moreover, the alleged injury is particularized because it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130; *see* *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292–93 (D.C. Cir. 2007) (collecting cases). The diminishment in value of an ownership interest in Hobbs Winery is not an undifferentiated or generalized grievance suffered by the public at large, but rather one personal to Appellant and any other partner or owner of Hobbs Winery. *See* *Spokeo, Inc.*, 578 U.S. at 339–40, 136 S.Ct. 1540; *United States v. Richardson*, 418 U.S. 166, 176–77, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

Finally, the alleged injury is actual or imminent. It is not merely "conjectural or hypothetical," *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotation marks and citation omitted), because it is based on Appellant's allegations that the registrations of Appellees' marks actually harm the value of its ownership interest. Appellant's Reply Br. at 5. That is not the type of injury we have previously found to be hypothetical. *See* *Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129, 139 (Fed. Cir. 2021) (concluding that a "possible injury" based on the use of a challenged mark in connection with sanitizing preparations was hypothetical where the ***1324** appellant had no plan or interest in expanding its business to encompass sanitizing preparations).

Appellant has therefore adequately established an injury-in-fact. To the extent that Appellees contend owners or shareholders of an organization cannot satisfy the constitutional requirement of an injury-in-fact based on injuries suffered by the organization itself, the Supreme Court has held the opposite. *See* *Collins v. Yellen*, 594 U.S. 220, 141 S. Ct 1761, 1779, 210 L.Ed.2d 432 (2021) (concluding that "pocketbook injur[ies]" suffered by shareholders of Fannie Mae and Freddie Mac when their interests were transferred to Treasury were "prototypical form[s] of injury in fact.").

B. Causation

Appellees' challenge to the "directness" of Appellant's injury is more appropriately considered in connection with the second element of Article III standing—causation. To satisfy that requirement, Appellant must show that its purported injury, *i.e.*, the diminishment in value of its ownership interest in Hobbs Winery, is "fairly traceable" to Appellees' (allegedly unlawful) registration of their marks. *Dep't of Educ. v. Brown*, 600 U.S. 551, 564, 143 S.Ct. 2343, 216 L.Ed.2d 1116 (2023). We conclude that it is.

Only "a causal connection between the injury and the conduct complained of" is required. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Accordingly, the inquiry is specific to the *alleged injury* and the *alleged unlawful conduct*. Here, that requirement is satisfied. The allegedly unlawful registrations of Appellees' marks cause a diminishment of value in Appellant's Hobbs Winery ownership interest. The mere fact that another party,

Hobbs Winery, actually owns the trademark (and may suffer a more "direct" injury than Appellant) does not mean that Appellant's injury is not fairly traceable to the challenged trademark registrations. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

C. Redressability

Finally, there can be no doubt that Appellant's injury would be redressed by a favorable decision. If Appellant succeeded in its challenge, this court has the power to enforce the cancellation of Appellees' marks. Such cancellations would eliminate the complained-of injury to Appellant's ownership interest in Hobbs Winery. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (to demonstrate redressability, Appellant must show a "substantial likelihood that the requested relief will remedy the alleged injury in fact" (internal quotation marks and citation omitted)).

We are therefore satisfied that Appellant has met its burden as to Article III standing in this case and can therefore proceed to the merits.[2]

***1325** III

This case requires us to resolve whether Appellant falls within the class of plaintiffs who Congress has authorized to seek cancellation of Appellees' trademark registrations under 15 U.S.C. § 1064. The Board concluded that it did not, and, on *de novo* review, we agree. *See Corcamore*, 978 F.3d at 1303 (providing that whether or not a party is entitled to bring a statutory cause of action is a legal question reviewed *de novo*).

To answer that question, we apply the analytical framework set forth by the Supreme Court in *Lexmark*, which provides two requirements to establish an entitlement to a statutory cause of action. 572 U.S. at 129, 134 S.Ct. 1377; *see Corcamore*, 978 F.3d at 1305 (holding that *Lexmark* controls the statutory cause of action analysis under § 1064). First, Appellant must show that its interests fall within the "zone of interests" that Congress intended to protect in enacting the relevant statute. *Lexmark*, 572 U.S. at 129, 134 S.Ct. 1377. Second, Appellant must show that its injuries are proximately caused by Appellees' alleged violation of that statute. *Id.* at 132, 134 S.Ct. 1377. In other words, Appellant must establish that its harm is not "too remote" from Appellees' alleged unlawful conduct. *Id.* at 133, 134 S.Ct. 1377.

As we observed in *Corcamore*, the two-part analysis of *Lexmark* has "no meaningful, substantial difference" from the test that this court has traditionally applied in proceedings arising under § 1064. 978 F.3d at 1304. That test asks whether a trademark challenger has demonstrated "a real interest in cancelling the [registered trademarks at issue] and a reasonable belief that the [registered trademarks] are causing it damage." *Id.* (alterations in original) (quoting *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014)). Each of the zone-of-interests test and real-interests test serves the purpose of excluding only the claims of "mere intermeddlers or ... meddlesome parties acting as self-appointed guardians of the purity of the Register." *Id.* at 1305 (alteration in original) (quoting *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1325–26 (Fed. Cir. 1983)).

A. Zone of Interests

We begin with the zone-of-interests, or the "real interests," requirement. Where a petitioner's grounds for cancellation are rooted in its allegations that the challenged marks are confusingly similar to the allegedly infringed mark, we have held that the petitioner can satisfy that requirement if it has a "legitimate commercial interest" in the allegedly infringed mark. *Empresa Cubana*, 753 F.3d at 1275 (citing *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (CCPA 1982)); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1374 (Fed. Cir. 2020); *see Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072 (Fed. Cir. 2022); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) ("A belief in likely damage can be shown by establishing a direct commercial interest.").

It is undisputed here that Appellant neither uses nor possesses an individual ownership right in the allegedly infringed PAUL HOBBS mark. *See* Oral Arg. at 3:48–3:58, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1383_04012024.mp3 ***1326** (counsel for Appellant acknowledging that it does not use the mark). That is, Appellant does not personally own or conduct any business under the PAUL HOBBS mark that is or would be

negatively impacted in sales or reputation if its allegations were proved. Indeed, Appellant admits that it seeks to cancel Appellees' marks "*on behalf of* [Hobbs Winery]'s interests." Appellant's Br. at 6; *id.* at 17 ("This effort – on behalf of [Hobbs Winery] – is solely to police unauthorized third-parties' uses of HOBBS[.]"); *id.* at 18 ("Petitioners are ... proceeding against third parties *on* [Hobbs Winery's] *behalf*."). Under those circumstances, in which Appellant's only basis to challenge Appellees' marks is its minority ownership interest in the owner of the allegedly infringed mark, and not its own commercial activity allegedly affected by Appellees' marks, we conclude that it is not within the zone of interests entitled to seek cancellation of those marks under § 1064.

That conclusion is supported by the Supreme Court's guidance that Congress's intent in enacting the Lanham Act was to provide a cause of action to persons *engaged in commerce*, not consumers, as well as our case law proscribing "mere intermeddlers" from seeking cancellation of challenged marks. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) ("Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers."); *Corcamore*, 978 F.3d at 1305; *see also* Oral Arg. at 25:29–25:34 (counsel for Appellant agreeing that a "commercial interest is required, under *Lexmark*, to fall within the zone of interests" of § 1064). While Appellant, who, after all, owns up to 21.6% of Hobbs Winery, is not properly called an "intermeddler," it indeed lacks the direct commercial interest in the registration at issue that the trademark laws contemplate as providing a basis for a cause of action.

To be sure, Appellant is correct that an entitlement to cancel registration under § 1064 is not limited to those with a direct *proprietary* interest in a trademark. *Australian Therapeutic*, 965 F.3d at 1374 ("Our decision in *Otto Roth* does not require a party to establish proprietary rights in a mark in order to meet the statutory requirements to challenge a mark."). We have held, for example, that a petitioner whose trademark application has been denied based on a challenged mark has a right to seek cancellation of that mark. *Id.*; *Empresa Cubana*, 753 F.3d at 1274–75. In such a case, by filing a trademark application, the petitioner has attested to using a mark (or having an intent to use the mark) in commerce. *See* 15 U.S.C. § 1051(a)–(b). Those petitioners, then, have a commercial interest in opposing or cancelling the registration of a mark that has prevented the registration of their own mark. Indeed, that was the case in *Australian Therapeutic* and *Empresa Cubana*, where, despite not owning a registered U.S. trademark, the petitioners were engaged in the sales and advertising of goods that were adversely affected by the challenged marks. *See Australian Therapeutic*, 965 F.3d at 1375–76; *Empresa Cubana*, 753 F.3d at 1271.

We have also held, albeit pre-*Lexmark*, that a trade association, as "the watchdog for the industry," may have a right to oppose a mark's registration where its individual members each have a commercial interest in cancelling the accused mark. *See Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987). That is, in *Jewelers*, we permitted an *organization* to oppose the registration of a mark on behalf of its *individual members* ***1327** because it established, among other things, that those individual members each had a commercial interest in the outcome of the proceeding. *Id.* at 494–95. That case is distinguishable from the concerns raised here, where a single partner, with no commercial activity of its own, seeks to cancel marks based *only* on its minority interest in the trademark owner.

Because Appellant has failed to allege any individual and legitimate commercial interest that is adversely affected by Appellees' use of their registered trademarks, its claims do not fall within the zone of interests of § 1064.

B. Proximate Causation

Even if Appellant's claims fell within the zone of interests of § 1064, it cannot satisfy the proximate causation requirement.

Acknowledging that the outer bounds of the proximate-cause requirement are "not easy to define," the Supreme Court explained in *Lexmark* that a harm will be "too remote" from the alleged unlawful conduct if it "is purely derivative of misfortunes visited upon a third person by the defendant's acts." 572 U.S. at 133, 134 S.Ct. 1377 (internal quotation marks and citation omitted). The Court explained that, "while a competitor who is forced out of business by a defendant's [unlawful conduct] generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitor's inability to meet its financial obligations." *Id.* at 134, 134 S.Ct. 1377 (cleaned up).

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

That is essentially the case here. The alleged diminishment in value of Appellant's ownership interest in Hobbs Winery due to Appellees' use of their marks is suffered only as a consequence of an injury suffered by Hobbs Winery itself. That is, absent injury to Hobbs Winery's PAUL HOBBS mark, there can be no injury to Appellant. Thus, because Appellant's alleged injury is merely derivative of any injury suffered by Hobbs Winery, it is too remote to provide Appellant with a cause of action under § 1064.

Conclusion

For the foregoing reasons, we hold that Appellant lacks entitlement to a statutory cause of action under § 1064. We have considered Appellant's remaining arguments and find them unpersuasive. The Board's dismissal of Appellant's cancellation petition is affirmed.

**AFFIRMED**

**All Citations**

102 F.4th 1314, 118 Fed.R.Serv.3d 1744

Footnotes

1 The statutory requirements to cancel registration of a mark under § 1064 are substantively equivalent to those required to oppose registration under § 1063. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1306 n.2 (Fed. Cir. 2020).

2 We observe that this case raises a separate question whether Appellant has third-party standing to challenge Appellees' marks based only on its ownership interest in Hobbs Winery, the *actual* owner of the allegedly infringed PAUL HOBBS mark. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (explaining the additional showings required of a party seeking to assert the legal rights of another). Appellees, however, have not challenged the propriety of Appellant's appeal on that basis, so any such argument is waived. *Brooklyn Brewery*, 17 F.4th at 140 (citing *June Med. Servs. L. L. C. v. Russo*, 591 U.S. 299, 316–17, 140 S.Ct. 2103, 207 L.Ed.2d 566 (2020) (explaining that because third-party standing is a prudential limit on federal jurisdiction separate from Article III, it can be forfeited or waived)).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.