# United States Court of Appeals for the Federal Circuit

---

**REBECCA CURTIN,**
*Appellant*

**v.**

**UNITED TRADEMARK HOLDINGS, INC.,**
*Appellee*

---

2023–2140

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91241083.

---

Decided: May 22, 2025

---

RYAN C. MORRIS, Workman Nydegger, Salt Lake City, UT, argued for appellant. Also represented by MATTHEW BARLOW, JOHN C. STRINGHAM, DAVID R. TODD.

ERIK PELTON, Erik M. Pelton & Associates, PLLC, Falls Church, VA, argued for appellee.

SARAH E. CRAVEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for amicus curiae Coke Morgan Stewart. Also represented by CHRISTINA J. HIEBER, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before TARANTO and HUGHES, *Circuit Judges*, and BARNETT, *Judge*.[1]

HUGHES, *Circuit Judge*.

Rebecca Curtin filed an opposition under 15 U.S.C. § 1063 to United Trademark Holdings' registration of the mark RAPUNZEL in International Class 28, which covers dolls and toy figures. The Trademark Trial and Appeal Board dismissed her opposition after concluding she was not statutorily entitled to oppose a registration under § 1063. Because the Board properly applied the *Lexmark* framework to conclude that Ms. Curtin was not entitled to bring her opposition under § 1063, we affirm.

## I

This appeal concerns whether Ms. Curtin was entitled to oppose United Trademark Holdings' (UTH's) registration of a trademark under the Lanham Act, alleging that the mark fails to function as a trademark and that the mark is generic and descriptive. We begin with an overview of the structure of the Lanham Act.

The Lanham Act created a system "for the registration and protection of trademarks used in commerce." Lanham (Trademark) Act, Pub. L. No. 79–489, 60 Stat. 427 (July 5, 1946), codified at 15 U.S.C. § 1051 et seq. The Lanham Act established an administrative process administered by the United States Patent and Trademark Office by which trademark owners may register their marks on the principal register and sets forth conditions for refusing registration of certain trademarks. One basis for refusing a trademark registration is when "a mark which . . . when

---

[1] Honorable Mark A. Barnett, Chief Judge, United States Court of International Trade, sitting by designation.

used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them." 15 U.S.C. § 1052(e)(1). Another basis for refusing a trademark registration is because it is generic, meaning it "is the common descriptive name of a class of goods or services" such that it is incapable of denoting a unique source as required by the statutory definition of trademark. *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1366 (Fed. Cir. 2018) (quoting *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986)); *see* 15 U.S.C. § 1127 (defining a trademark as being used "to identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others"). In that way, genericness is encompassed by descriptiveness. *See Bullshine Distillery LLC v. Sazerac Brands, LLC*, 130 F.4th 1025, 1029 (Fed. Cir. 2025) ("The term descriptive encompasses generic terms because a generic term is the ultimate in descriptiveness and is ineligible for federal trademark registration." (internal citations and quotation marks omitted)). A third basis for refusing registration is that the mark "comprises any matter that, as a whole, is functional," for which trademark protection would intrude on the subject addressed by patent law. 15 U.S.C. § 1052(e)(5); *see Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273–75 (Fed. Cir. 2002).

After a trademark application is filed, it is referred to an examiner who determines whether the mark is entitled to registration. 15 U.S.C. § 1062. If the USPTO examining attorney allows the applicant to register the mark, the USPTO publishes the mark in its Official Gazette. *Id.* § 1062(a). 15 U.S.C. § 1063 (Section 13 of the Lanham Act) provides that "[a]ny person who believes that he would be damaged by the registration of a mark . . . may . . . file an opposition" with the USPTO within 30 days of the USPTO's publication of the mark in the Official Gazette. In the case of an opposition, the USPTO "Director shall give notice to all parties and shall direct a Trademark Trial and Appeal

Board to determine and decide the respective rights of registration." 15 U.S.C. § 1067. "In such proceedings," the Board (on behalf of the Director) "may refuse to register the opposed mark, . . . may modify the application . . . , or may register the mark." *Id.* § 1068. Grounds for opposing the registration of a mark include any ground for refusing the registration. Trademark Trial and Appeal Board Manual Procedure § 309.03(c)(1) (June 2023). "Unless registration is successfully opposed," the USPTO shall register the trademark if it is "entitled to registration," issue a certificate of registration, and publish a notice of registration in the Official Gazette. 15 U.S.C. § 1063(b); *see Heritage All. v. Am. Pol'y Roundtable*, 133 F.4th 1063, 1071 (Fed. Cir. 2025) ("The opposition provision of the Lanham Act says that registration generally follows when an opposition, if any, fails, but the stated precondition is that the mark at issue be a 'mark entitled to registration,' 15 U.S.C. § 1063(b), which might allow the PTO, after an opposition fails, to reconsider the examiner's pre-opposition allowance.").

15 U.S.C. § 1064 (Section 14 of the Lanham Act) establishes a similar administrative process to seek cancellation of a trademark registration after it has been registered on the USPTO's principal register. Like § 1063, it provides that "[a]ny person who believes that he is or will be damaged . . . by the registration of a mark" may initiate an administrative process by applying to cancel said registration "[w]ithin five years from the date of the registration of the mark[.]" 15 U.S.C. § 1064. Such a person may also apply to cancel the registration "[a]t any time if the registered mark becomes the generic name for the goods or services," the mark "has been abandoned, or its registration was obtained fraudulently," or certain other circumstances arise. *Id.* § 1064(3). The Lanham Act separately provides trademark holders various avenues to enforce their mark in district court. *See id.* §§ 1114(1), 1125(a)(1).

II

UTH sells dolls, including dolls with long blonde hair under the name Rapunzel. On November 20, 2017, UTH filed an application to register the RAPUNZEL trademark (Ser. No. 87/690,863), asserting use of the mark in commerce in connection with dolls and toy figures in International Class 28. J.A. 38–40. UTH's application was approved by the USPTO examiner and published in the Official Gazette for opposition on April 10, 2018.

On May 9, 2018, Ms. Curtin filed an opposition under 15 U.S.C. § 1063 to UTH's registration of the mark RAPUNZEL. Ms. Curtin first amended her opposition in July 2018. UTH moved to dismiss both oppositions, claiming Ms. Curtin did not have statutory standing to oppose UTH's mark. This appeal arises from Ms. Curtin's Second Amended Notice of Opposition filed on January 22, 2019, in which she opposed the RAPUNZEL mark as descriptive, generic, failing to function as a trademark, and for fraud in the application. Regarding her interest in bringing this opposition, Ms. Curtin alleged that, as a doll collector and mother to a young daughter, she is "a consumer who participates amongst other consumers in the marketplace for dolls and toy figures of fairytale characters, including Rapunzel." J.A. 266. Regarding the injury that justified her opposition, she claimed that "[she] and other consumers will be denied access to healthy marketplace competition for products that represent" Rapunzel if private companies are allowed "to trademark the name of a famous fairy tale character in the public domain." J.A. 266. She further alleged that "[she] and other consumers will also likely face an increased cost of goods associated with Rapunzel merchandise, given the lack of competition." J.A. 266. She stated her belief that registration of UTH's mark "could chill the creation of new dolls and toys by fans of the fairytale, crowding out the substantial social benefit of having diverse interpreters of the fairy tale's legacy," and deny her and other consumers "access to classic, already existing,

Rapunzel merchandise." J.A. 266. She included a petition with 432 signatures of those who shared her belief that registration of the RAPUNZEL mark would impact consumers' ability to find Rapunzel dolls and adversely affect marketplace competition for Rapunzel dolls. UTH denied her allegations in its answer.

Ms. Curtin twice moved for partial summary judgment on the grounds that the RAPUNZEL mark is generic, descriptive, and fails to function as a trademark; the Board denied both motions. The Board bifurcated the opposition proceeding into two separate trial phases, with the first phase to focus solely on the issue of Ms. Curtin's entitlement to a statutory cause of action, and, if necessary, a second phase to focus on the specific grounds pleaded. Following briefing for Phase One by the parties, the Board dismissed the opposition, finding Ms. Curtin "failed to prove she is entitled to the statutory cause of action she invoked—opposing registration of Applicant's mark." J.A. 6. The Board relied on this court's opinion in *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298 (Fed. Cir. 2020), which invokes the zone-of-interests test set forth by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), to evaluate whether Ms. Curtin was entitled to bring her opposition. J.A. 5, 10. Specifically, the Board read *Corcamore* to instruct that "[a] plaintiff may oppose registration of a mark when doing so is within the zone of interests protected by the statute and she has a reasonable belief in damage that would be proximately caused by registration of the mark." J.A. 5. The Board explained that while "[e]ntitlement to the statutory cause of action . . . is a requirement in every inter partes case," and "mere consumers such as [Ms. Curtin] are generally not statutorily entitled to oppose registration under 15 U.S.C. § 1063." J.A. 5–6. The Board explained this deviation from its prior denial of UTH's motion to dismiss the prior versions of Ms. Curtin's Notices of Opposition for lack of statutory entitlement was based mostly on *Ritchie v.*

*Simpson*, 170 F.3d 1092 (Fed. Cir. 1999), "a case that addressed a section of the Trademark Act barring registration of 'immoral' or 'scandalous' matter," but "the Supreme Court [had since] found the bar on registration of 'immoral' or 'scandalous' matter unconstitutional" in *Iancu v. Brunetti*, 588 U.S. 388 (2019). J.A. 3 n.4.

Ms. Curtin timely appealed the Board's dismissal of her opposition. 15 U.S.C. § 1071(a)(2). We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a).

## III

The issue before us is not whether the RAPUNZEL mark UTH seeks to register is properly registrable under trademark law. Rather, the question presented is a narrow one: whether Ms. Curtin, in her capacity as a consumer, is entitled to oppose UTH's registration of the RAPUNZEL mark under 15 U.S.C. § 1063 as generic, descriptive, and fraudulent. Where entitlement to oppose or cancel a trademark registration "turns on statutory interpretation," we "review[] the question de novo." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014).

Ms. Curtin challenges the Board's decision to apply the *Lexmark* framework to determine whether she was entitled to bring an opposition under § 1063. She then argues that, even if its use of the *Lexmark* framework was proper, the Board erred in concluding that she did not fall within the class of individuals authorized by the statute to bring an opposition of the nature she brought here. We address each argument in turn.

### A

#### 1

The parties disagree over whether the Board's use of the Supreme Court's zone-of-interests framework set forth

in *Lexmark* was proper in determining whether Ms. Curtin was entitled to oppose UTH's registration of the RAPUNZEL mark under § 1063. Ms. Curtin contends that this court's decision in *Ritchie v. Simpson* is controlling authority on entitlement to oppose a trademark registration, and that the Board erred in applying the *Lexmark* framework instead.

*Ritchie v. Simpson* concerned a party's entitlement to oppose the registration of a mark under § 1063 on the basis that the mark comprised "immoral or scandalous matter."[2] 170 F.3d at 1093. In *Ritchie*, this court noted that "'case' and 'controversy' restrictions for [Article III] standing do not apply to matters before administrative agencies and boards[.]" *Id.* at 1094 (internal citations omitted). Instead, we held "the starting point for a standing determination for a litigant before an administrative agency . . . is the statute that confers standing before that agency." *Id.* at 1095. Accordingly, we held that § 1063's provision that "[a]ny person who believes that he would be damaged by the registration of a mark . . . may . . . file an opposition in the Patent and Trademark Office, stating the grounds therefor" "establishes a broad class of persons who are proper opposers; by its terms the statute only requires that a person have a belief that he would suffer some kind of damage if the mark is registered." *Id.* We explained that an opposer under § 1063 must also "meet two judicially-created requirements—the opposer must have a 'real interest' in the

---

[2] As mentioned above, this basis for barring trademark registration, stated in § 1052(a), has since been invalidated by the Supreme Court as unconstitutional on First Amendment grounds. *See Iancu v. Brunetti*, 588 U.S. 388, 388 (2019); *cf. Matal v. Tam*, 582 U.S. 218, 218 (2017) (affirming Federal Circuit's invalidation of "disparage[ment]" portion of § 1052(a) on First Amendment grounds).

proceedings and must have a 'reasonable' basis for his belief of damage." *Id.* The real interest requirement mandates that the opposer have "a legitimate personal interest in the opposition;" that is, a "direct and personal stake in the outcome." *Id.* The reasonable basis requirement requires that the opposer's belief of damage "have a reasonable basis in fact." *Id.* at 1098 (internal citation and quotation marks omitted). Ms. Curtin argues that an opposer bringing a claim under § 1063 "need only satisfy the language of [§ 1063], as well as the 'real interest' and 'reasonable' basis requirements." Appellant's Opening Br. 29.

Fifteen years later, in *Lexmark*, the Supreme Court addressed entitlement to sue under the cause of action for false advertising provided by the Lanham Act (codified as 15 U.S.C. § 1125(a)). 572 U.S. at 129. The Supreme Court explained that "we presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id.* (internal citation and quotation marks omitted). After noting that the zone-of-interests test is not "especially demanding," the Supreme Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act[.]" *Id.* at 130, 131–32 (internal citations and quotation marks omitted). The Supreme Court in *Lexmark* further noted that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132. The zone-of-interests test and proximate cause requirement are together referred to as the *Lexmark* framework for evaluating entitlement to exercise a statutory cause of action.

In *Corcamore*, this court held there is "no principled reason why the analytical framework articulated by the

Court in *Lexmark* should not apply" to determine the class of parties who may seek cancellation of a mark under § 1064. 978 F.3d at 1305. We then applied the *Lexmark* framework to conclude that the party seeking to cancel the mark at issue "f[ell] within the class of parties whom Congress has authorized to sue under the statutory cause of action of § 1064." *Id.* at 1307. Specifically, we found that trademark challenger SFM had sufficiently alleged that it sold substantially similar goods under its mark SPROUTS to those that Corcamore, the owner of the registration for the mark SPROUT, sold under its mark. Thus, we concluded that "SFM's allegation . . . identifie[d] an interest falling within the zone of interests protected by § 1064." *Id.* at 1306–07. We also found that SFM had sufficiently alleged proximate causation by demonstrating its "reasonable belief of damage resulting from a likelihood of confusion between SFM's SPROUTS mark and Corcamore's SPROUT mark." *Id.* at 1307.

2

Ms. Curtin argues that the entitlement to bring opposition proceedings to a trademark registration under § 1063 provides for an administrative proceeding, not a cause of action, and that the *Lexmark* framework is only applicable to parties seeking to assert a statutory cause of action. Invoking this court's statement in a citation in *Ritchie* that "[a]dministrative adjudications . . . are not an [A]rticle III proceeding to which either the 'case or controversy' or prudential standing requirements apply,'" 170 F.3d at 1094 (quoting *Ecee, Inc. v. Fed.l Energy Regul. Comm'n*, 645 F.2d 339, 349–50 (5th Cir.1981)), she argues that § 1063 does not provide a cause of action in court, but rather a "basis for '[a]ny person' to oppose registration of a trademark in an administrative proceeding before an agency," and "[t]he distinction between participation in an administrative proceeding and a private right of action in court is critical," Appellant's Opening Br. 21, 26. Ms. Curtin argues that the Board thus erroneously relied on

*Corcamore*, because *Corcamore* concerns entitlement to bring a cancellation proceeding against an existing registration under § 1064. She argues that, unlike § 1063, § 1064 does provide a cause of action to which the *Lexmark* framework is properly applied to determine who is entitled to bring such a cancellation proceeding.

Ms. Curtin accordingly contends that only the language of § 1063 and cases specifically addressing entitlement to bring an opposition under § 1063 are applicable in determining whether she is authorized to oppose the registration of UTH's RAPUNZEL mark under § 1063. *See* Appellant's Opening Br. 31–33. She argues that any person may oppose registration of a trademark under § 1063 subject only to the requirements articulated in *Ritchie* that she "show 'a belief that he would suffer some kind of damage if the mark is registered,' 'have a "real interest in the proceedings,"' and 'have a "reasonable" basis for his belief of damage.'" Appellant's Opening Br. 26–27 (quoting *Ritchie,* 170 F.3d at 1095). We disagree.

To start, Ms. Curtin does not address this court's prior observation that "[g]iven [their] similarities in purpose and application, a party that demonstrates a real interest in cancelling a trademark under § 1064 has demonstrated an interest falling within the zone of interests protected by § 1064." *Corcamore,* 978 F.3d at 1306. That is, she does not explain why applying the real-interest test articulated in *Ritchie* instead of the *Lexmark* analytical framework would change the Board's ultimate determination that she is not entitled to oppose UTH's mark under § 1063.[3]

[3] Indeed, if the Board had applied *Ritchie*'s pre-*Lexmark* real-interest test, it likely would have reached the same conclusion that Ms. Curtin was not entitled to bring her opposition based only on her interests as a consumer,

Regardless, *Ritchie* is distinguishable from the present case because in *Ritchie*, the basis for opposition under § 1063 was disparagement and reputational harm to the opposer based on statutory prohibitions of the registration of immoral or scandalous marks which may disparage persons or beliefs (which were later invalidated on First Amendment grounds). *Ritchie,* 170 F.3d at 1093–94. In *Ritchie*, we held that an opposer who stated he would suffer disparagement of his beliefs from the opposed mark's registration had adequately alleged a real interest in the outcome of that opposition proceeding. *Id.* at 1097. This basis for opposing a trademark is unrelated to protecting any commercial interest, and the person who alleged he would be disparaged by the mark's registration was properly found eligible to oppose the mark on that basis.

In this case, the bases for Ms. Curtin's opposition to UTH's mark (that the mark fails to function as a trademark and is generic and descriptive) are rooted in commercial interests, as discussed in more detail in the next section. *Lexmark* and *Corcamore*, which provide a framework for evaluating whether a party falls within the zone-of-interests of statutory provisions of the Lanham Act, provide the better line of cases by which to evaluate Ms. Curtin's ability to bring her opposition in this case.

Ms. Curtin further argues that *Corcamore* cannot apply to this case because it pertains to entitlement to initiate cancellation proceedings under § 1064. Her attempt to distinguish between § 1063 and § 1064 is unavailing in view of our clear precedent on this matter. First, both statutes state in nearly identical terms that the group of individuals entitled to bring an action challenging a trademark

---

as we explain in the next section. *See, e.g.*, *Corcamore*, 978 F.3d at 1305–06 ("[L]ike the zone-of-interests test, a petitioner can satisfy the real-interest test by demonstrating a commercial interest.").

registration under their respective sections are those who believe they will be damaged by the mark's registration. *Compare* § 1063 ("Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . may . . . file an opposition[.]"), *with* § 1064 ("A petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register[.]"). This court has observed that "[t]he linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that we construe the requirements of these provisions consistently. There is no basis for interpreting them differently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998) (internal citation omitted); *see also Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072–73 (Fed. Cir. 2022) (quoting *Corcamore*, 978 F.3d at 1305) (explaining that the "similar statutory language" between 15 U.S.C. § 1125(a)'s false-advertising provision at issue in *Lexmark* and § 1064 justified "hold[ing] that the *Lexmark* zone-of-interests and proximate-causation requirements control the statutory cause of action analysis under § 1064"). Indeed, in our court's most recent case addressing which parties are authorized to commence administrative proceedings challenging a trademark under the Lanham Act, *Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*, we noted that "[t]he statutory requirements to cancel registration of a mark under § 1064 are *substantively equivalent* to those required to oppose registration under § 1063." 102 F.4th 1314, 1321 n.1 (Fed. Cir. 2024) (emphasis added). We reject Ms. Curtin's argument that our caselaw regarding entitlement to challenge a trademark under § 1064 is inapplicable to entitlement to challenge a trademark under § 1063. The Board correctly applied the *Lexmark* framework in assessing whether Ms. Curtin was entitled to bring her opposition to UTH's mark under § 1063.

B

Ms. Curtin next argues that even if the Board was correct to apply the *Lexmark* framework in determining whether she was entitled to oppose registration under § 1063, the Board erred in its application of the framework to conclude that she does not fall within the class of individuals whom the statutory scheme empowers to bring an opposition of the nature she brought in the present case.

Under the *Lexmark* framework, a plaintiff may oppose registration of a mark when (1) her interests are within the zone of interests protected by the statute and (2) she has a reasonable belief in damage that would be proximately caused by registration of the mark in violation of the opposition statute. *Lexmark*, 572 U.S. at 129–134; *see also Corcamore,* 978 F.3d at 1303. In *Corcamore*, this court specified "that the purpose of the zone-of-interests test is to 'foreclose[ ] suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue.'" *Id.* (alteration in original) (quoting *Lexmark*, 572 U.S. at 130, 134). Applying this framework, the Board concluded that Ms. Curtin, who asserts only interests in the mark's registration related to her status as a consumer of dolls, did not fall within the zone of interests to bring an opposition under § 1063, and that the damage she sought to avoid is too remote to be proximately caused by violations of the statute. We agree with the Board on both conclusions.

1

In discerning whether Ms. Curtin's interests as a consumer were within the zone of interests of § 1063, the Board determined that it must look to the interests protected by the Lanham Act as a whole. J.A. 7. The Board concluded that *Lexmark* had already addressed what those interests were: "regulat[ion] [of] commerce and protect[ing] plaintiffs with commercial interests." J.A. 7. The Board

held that "*Lexmark*'s holdings on entitlement to a statutory (Trademark Act) cause of action apply to opposition proceedings such as this one," under § 1063, even though *Lexmark* itself concerned the cause of action in § 1125(a) J.A. 10. And because Ms. Curtin is a "mere consumer that buys goods or services," the Board concluded she "is not under the Trademark Act's aegis" and that the "statutory cause of action is reserved for those with commercial interests," meaning actual or potential competitors or other offerors of goods or services (using sufficiently similar marks), as opposed to consumers. J.A. 10–11.

Ms. Curtin first argues that the Board erred in concluding that her interests as "a consumer of fairytale-themed products" did not fall within the zone of interests protected by § 1063 because this "statutory cause of action is reserved for those with commercial interests." J.A. 10–11; *see* Appellant's Opening Br. 34. She argues that the Board incorrectly overextended the Supreme Court's holding in *Lexmark* to conclude that a commercial interest is necessary to oppose a mark's registration under § 1063. J.A. 7–10; *see* Appellant's Opening Br. 35–36 ("The Supreme Court in *Lexmark* nowhere suggested that it was opining broadly about all interests that might fall within the zone of interests protected by all provisions of the Lanham Act. Rather, the Supreme Court emphasized that 'the breadth of the zone of interests varies according to the provisions of law at issue.'") (quoting *Lexmark*, 572 U.S. at 130). In reaching this conclusion, the Board invoked 15 U.S.C. § 1127, which states "[t]he intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; . . . [and] to protect persons engaged in such commerce against unfair competition." The Board also quoted the Supreme Court's conclusion in *Lexmark* that "'to come within the zone of interests in a suit' under Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) – which, similar to [§ 1063], may be invoked

only by a plaintiff 'who believes that he or she is or is likely to be damaged' by the challenged act – 'a plaintiff must allege an injury to a commercial interest in reputation or sales.'" J.A. 8 (emphasis omitted) (quoting *Lexmark*, 572 U.S. at 131–32). UTH invokes *Corcamore* to argue for the broader position that "a commercial interest is required to satisfy the zone-of-interests requirement." Appellee's Br. 18.

As the United States Patent and Trademark Office points out in its amicus brief, "given the potential for different provisions of the Lanham Act to protect different interests," we should not adopt UTH's "broader position that a commercial interest is always required to satisfy the zone-of-interests test," since "[o]ther grounds for opposing or seeking to cancel the registration of a mark may or may not call for a different analysis, and may or may not protect different interests." USPTO Amicus Br. 23 (citing as an example 15 U.S.C. § 1052(b), which disallows "registration of marks that consist of the 'flag or coat of arms' of certain governments"). The USPTO correctly notes that "[w]hether a zone-of-interests limitation applies in a particular administrative context, and whether the class of people who may seek administrative relief in a particular context is coextensive with the class of people who may sue in court, will depend on the language of the particular statute and the particular interests involved." USPTO Amicus Br. 23. The interest protected by a particular provision of the Lanham Act should not be subject to a blanket rule that always assumes the intended protected interest is commercial. Instead, the protected interest should be evaluated based on the particular ground for the challenge, since there are clearly grounds against registration of a mark in the Lanham Act that are not intended to protect commercial interests. In the context of challenges to a trademark under the Lanham Act, both in the form of an opposition proceeding under § 1063 or a cancellation proceeding under § 1064, the zone-of-interests test should be tailored based on the

specific bases cited for opposing registration or seeking cancellation of the registration for a mark.

In the present case, the opposition under § 1063 is based on allegations that the mark fails to function as a trademark and is generic and descriptive. Ms. Curtin argues the Board failed to assess the specific interests protected by her opposition under § 1063. However, as noted above, the Board did assess her grounds for opposition and concluded the interests protected by those grounds were commercial. *See* J.A. 7 n.6 ("Opposer's grounds for opposition in this case arise out of the Trademark Act's 'intent' to 'protect persons engaged in . . . commerce against unfair competition.'" (quoting 15 U.S.C. § 1127)). Ms. Curtin does not contest our binding precedent, which unequivocally provides that the prohibitions against descriptive and generic marks protect commercial interests. This court's predecessor has noted that "[t]he major reasons for not protecting [descriptive] marks are: (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products"—these are commercial interests. *In re Abcor Dev. Corp.*, 588 F.2d 811, 813 (C.C.P.A. 1978). We have similarly explained that the prohibition against granting trademark registration for generic terms was established to avoid "grant[ing] the owner of the mark a monopoly," another commercial interest. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001) (internal citation and quotation marks omitted).

Insofar as Ms. Curtin contends that the risk to consumers from registering this mark exists in the form of deceptive or misleading use, which may implicate consumer interests, these were not among her bases for opposing the mark before the Board, so we need not consider whether these provisions also protect commercial interests. And to

the extent Ms. Curtin contends that § 1063 is also intended to protect the interests of consumers because trademark law exists to some extent to protect consumers in their ability to distinguish among products, the Supreme Court has explained that this goal may be served by conferring rights that only commercial actors have statutory standing to exercise. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("Though in the end consumers also benefit from the [Lanham] Act's proper enforcement, the cause of action [for false advertising] is for competitors, not consumers."); *USPTO v. Booking.com B. V.*, 591 U.S. 549, 552 (2020) (explaining that while "[g]uarding a trademark against use by others . . . secures to the owner of the mark the goodwill of her business and protects the ability of consumers to distinguish among competing producers," "[t]he Lanham Act . . . arms *trademark owners* with federal claims for relief." (alteration omitted) (emphasis added) (internal citations and quotation marks omitted)). The Board's holding that only commercial actors affected by the mark's registration fall within the zone of interests to oppose the registration as generic, descriptive, or functional under § 1063 is not inconsistent with the Lanham Act's purpose of protecting consumers.

2

The Board also found Ms. Curtin's showing of injury insufficient to invoke an opposition proceeding under § 1063. The Board correctly found Ms. Curtin's evidence too "limited" and the damage "too remote" to establish proximate causation where all her alleged harms are derivative of those harms that may be suffered by UTH's commercial competitors as a result of UTH's registration of the mark. J.A. 12. We agree.

Ms. Curtin's alleged injury from the registration of the RAPUNZEL mark is that "[she] and other consumers will be denied access to healthy marketplace competition for products that represent" Rapunzel if private companies are

allowed "to trademark the name of a famous fairy tale character in the public domain." J.A. 266. She further alleged that "[she] and other consumers will also likely face an increased cost of goods associated with Rapunzel merchandise, given the lack of competition." J.A. 266. She stated her "belie[f] that a trademark registration [for the name Rapunzel] could chill the creation of new dolls and toys by fans of the Rapunzel fairytale, crowding out the substantial social benefit of having diverse interpreters of the fairy tale's legacy." J.A. 266. She further testified that "[she] and other consumers will also likely be denied access to classic, already existing, Rapunzel merchandise whose sale may be precluded if Applicant receives a registration for the name 'Rapunzel.'" J.A. 266. Ms. Curtin included with her amended notice of opposition a petition with 432 signatures from people who shared her belief that registration of the "RAPUNZEL" mark would impact consumers' ability to find Rapunzel dolls and adversely affect marketplace competition for Rapunzel dolls.

The Board held that a person opposing a registration "must show economic or reputational injury flowing directly from" the registration, and "'[t]hat showing is generally not made when' a defendant's conduct 'produces injuries to a fellow commercial actor that in turn affect the plaintiff.'" J.A. 11–12 (alteration in original) (quoting *Lexmark*, 572 U.S. at 133–34). The Board found Ms. Curtin's "limited evidence . . . is too remote from registration and is entirely speculative." J.A. 12. It found that insofar as Ms. Curtin relied on "general economic theories" to assume registration of the mark would "harm 'healthy marketplace competition,'" there was no evidence in the record about any specific economic theory nor evidence that fairytale related markets perform according to general economic principles. J.A. 12.

Ms. Curtin first argues the Board's analysis of direct economic or reputational injury is faulty for being limited to commercial interests. We reject this argument for the

same reasons we rejected this argument in the context of the zone of interests; only injury to those interests that fall within the zone of interests are relevant to this inquiry. Ms. Curtin then argues that the Board erred in concluding her alleged injuries were "too remote, because the alleged damage to [her] depends first on the alleged effect of registration on other commercial doll makers or sellers." J.A. 13. The Board noted that the proximate cause showing "is generally not made when' a defendant's conduct 'produces injuries to a fellow commercial actor that in turn affect the plaintiff." J.A. 11–12 (quoting *Lexmark*, 572 U.S. at 133–34). Ms. Curtin contests this analysis as at odds with *Lexmark*'s instruction that an "intervening step" in causation "is not fatal to showing of proximate causation." Appellant's Opening Br. 43 (quoting *Lexmark*, 572 U.S. at 133). However, as we explained in *Luca McDermott*, "a harm will be 'too remote' from the alleged unlawful conduct if it 'is purely derivative of misfortunes visited upon a third person by the defendant's acts.'" 102 F.4th at 1327 (quoting *Lexmark*, 572 U.S. at 133). This court concluded that the challenger of a registered mark had not satisfied the proximate causation requirement where the "alleged injury is merely derivative of any injury suffered by [another party], it is too remote to provide [the challenger] with a cause of action under § 1064." *Id.* at 1327. Ms. Curtin's alleged harms are all, as UTH points out, "speculative tertiary effects of registration, namely, reduced marketplace competition, increased cost of RAPUNZEL merchandise, and fewer interpretations and creations of RAPUNZEL dolls." Appellee's Br. 23. These harms are insufficient to establish proximate causation for the same reasons provided by *Luca McDermott*—they are downstream harms first suffered by a commercial actor.

Ms. Curtin's only response to the Board's contention that her evidence of harm is too speculative is a citation to the Supreme Court's statement in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, that a trademark may distort

competition "not merely by successful suit but by the plausible threat of successful suit." Appellant's Opening Br. 45 n.3 (citing 529 U.S. 205, 214 (2000)). However, Ms. Curtin does not address how the Board erred in concluding that her speculative evidence does not establish such a plausible threat of suit that would chill competition in the ways she alleges. Neither party addresses the fact that the party alleging injury must establish that their belief is reasonable: Ms. Curtin has not provided any arguments refuting the Board's findings that her reliance on general economic theories without any case-specific data fails to establish a reasonable belief of proximate causation of injury. The Board properly found Ms. Curtin's allegations of harm were at best downstream effects of harms to commercial actors and were too remote to support a reasonable belief in injury.

## IV

We have considered the remainder of Ms. Curtin's arguments and find them unpersuasive. Because the Board correctly applied the *Lexmark* framework to find that Ms. Curtin did not have statutory standing to oppose UTH's registration of the RAPUNZEL mark under § 1063, we affirm.

**AFFIRMED**